The State, *ex rel.* Scobey, *v.* Stevens *et al.*

Filed Sept. 17, 1885.

◆

No. 10,949.

THE STATE, EX REL. SCOBEY, *v.* STEVENS ET AL.

OFFICE AND OFFICER.—*County Clerk.*—*Action on Bond to Recover Illegal Fees.* —*Constitutional Law.*—*Twice in Jeopardy.*—That part of section 6031, R. S. 1881, which provides that "Any officer who shall charge, demand, or take" any unauthorized fee for the performance of any official act, shall, in addition to being deemed guilty of a misdemeanor, "be liable on his official bond to the party injured for five times the illegal fees charged, demanded, or taken," is not unconstitutional, as being within the prohi-

bition of that part of the Bill of Rights which declares that " No person shall be put in jeopardy twice for the same offence."

SAME.—*Criminal and Civil Liability for Same Act.*—*Exemplary Damages.*—*Legislative Power.*—The Legislature has the power to prescribe fines and penalties against certain acts, and at the same time fix or limit the civil liability for the same acts, but not to authorize the recovery of unre-- stricted exemplary damages. ELLIOTT, J., dissents.

SAME.—*Liability on Bond for Failure to Discharge Duty Required by Subsequent Law.*—Under section 5528, R. S. 1881, a permanent, continuing liability is created against an officer and his sureties for the failure to discharge any duty imposed by existing law, and for the failure to discharge any duty required under laws subsequently enacted.

SAME.—*Motion to Re-Tax Costs.*—*Collateral Attack.*—The failure of a party to move to re-tax costs can not relieve an officer from his statutory liability if he has in fact charged illegal fees, nor is an action on his bond for such fees a collateral attack on the judgment for costs, of which such officer can take advantage.

SAME.—*Statute of Limitations.*—Under the second clause of section 293, R. S. 1881, an action on the bond of a county clerk to recover fees charged illegally may be brought within five years from the time the cause of action accrued.

From the Decatur Circuit Court.

*J. S. Scobey,* for appellant.

*J. D. Miller* and *F. E. Gavin,* for appellees.

MITCHELL, C. J.—The relator brought this suit on the official bond of Stevens, who was formerly clerk of the De- catur Circuit Court. The action was based on section 6031, R. S. 1881. This section enacts that "Any officer who shall charge, demand, or take any fee for any official act done or performed under the provisions of this act, other than as is herein allowed and provided for, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be fined in any sum not exceeding one hundred dollars, and shall be liable on his official bond to the party injured for five times the illegal fees charged, demanded, or taken, and the same may be recovered, with costs, in the circuit court."

It is charged that the defendant Stevens, having been elected and qualified as clerk, took upon himself the duties of that office on the 1st day of November, 1875, and con-

tinued therein until the expiration of his term; that, on the 6th day of February, 1877, a civil suit was commenced against the relator in the Decatur Circuit Court, which continued pending until the 31st day of July, 1879, when it was dismissed at his costs; that upon the dismissal of the suit, Stevens made up and taxed the costs for his services as clerk on the fee books of the court, and that of the costs so taxed there was included, in various specified items, the sum of $20 in excess of his legal charges, which, on the 29th day of May, 1882, he demanded of the relator, and for which he issued a fee bill, on the 5th day of June, 1882. The relator prays judgment for $100, being five times the amount of the fees alleged to have been illegally charged and demanded.

The court below sustained a general demurrer to the complaint, and the case comes here on this ruling.

It is argued by the learned counsel for the appellee, that so much of the statute as authorizes the recovery of five times the illegal fees charged, in a suit by the injured party on the official bond of the officer, is unconstitutional, as being within the prohibition of that part of the Bill of Rights which declares that "No person shall be put in jeopardy twice for the same offence." The extent of the argument on this point is the statement of the proposition by counsel for the appellee, and the citation in its support of *Koerner* v. *Oberly*, 56 Ind. 284 (26 Am. R. 34). In the appellant's brief we find no allusion to the question. This leads us to conclude that the ruling below must have turned upon some other point. As the question is presented for decision, it would have been a source of satisfaction to the court if the learned counsel on both sides had favored us with such argument of it as their learning and ability led us to expect. Whatever may be said of the case above cited, we do not think it controls the decision of the one before us. That was a suit brought by a wife to recover damages for an unlawful sale of intoxicating liquor to her husband, who was in the habit of becoming in-

toxicated. Section 12 of the act of 1873, Acts 873, p. 151, gave a right of action against any person so offending in favor of any person who should be injured thereby in person, property or means of support. It authorized a recovery by any person so injured of all damages which might be sustained, " and for exemplary damages." The same act made it a misdemeanor for any person to sell intoxicating liquor to a person in the habit of becoming intoxicated, and provided a penalty to be enforced by indictment or otherwise. It was held in the case relied on, that in so far as section 12 attempted to authorize the recovery of exemplary damages by the injured person, it was in conflict with the provision in the Bill of Rights above quoted, and therefore inoperative and void.

It has been the settled rule of decision in this State since the case of *Taber* v. *Hutson*, 5 Ind. 322, that in all that class of torts, for which, in addition to the civil remedy allowed to the injured party, the wrong-doer was amenable to criminal punishment, exemplary or punitory damages could not be recovered in a civil action; while, in the class not rising to the degree of criminality, the injured party might, where the elements of fraud, malice, gross negligence or oppression mingled in the controversy, in addition to full compensation for all other damages, recover what is termed exemplary or punitive damages. *Lytton* v. *Baird*, 95 Ind. 349; *Stewart* v. *Maddox*, 63 Ind. 51, and cases cited.

As defined, compensatory damages are held to include not only such pecuniary loss or injury in a given case as is capable of approximately accurate calculation, but in addition thereto such a sum as may be supposed adequate to compensate " for injury to business or profession, reputation or social position, and for physical suffering, as bodily pain, permanent disfiguration," etc., " and for mental trouble, as anguish of mind, sense of shame or humiliation, loss of honor," etc., " all of which are considered compensatory, and not exemplary or punitive damages."

Exemplary or punitive damages, the terms exemplary and punitive being synonymous, are damages allowed as a punishment, or by way of example, to deter others from the like offences, for torts committed with accompanying fraud, malice or oppression.

The rule of decision defining the class of cases in which exemplary damages would, and that in which such damages would not, be allowed, rests wholly on judicial construction, and, except in the cases of *Koerner* v. *Oberly, supra,* and *Schafer* v. *Smith,* 63 Ind. 226, which involved the same statute, and followed the first named case, none of the cases in which the rule is declared and applied involve any question of legislative power.

Previous to the decision in the Koerner case, the court seemed to regard the constitutional provision referred to as an obstacle against its power to allow, or at least against the policy of allowing, exemplary damages in the class of cases where the defendant was also subject to criminal punishment. While the question of *power* was not in any case, so far as we know, directly determined, the prevailing rule was adopted by the court as being in consonance with the spirit of both the constitutional provision and the ancient common law maxim, and as a safe middle ground in a controversy with which courts and lawyers are familiar.

In *Koerner* v. *Oberly, supra,* it was distinctly ruled that the Legislature was prohibited by the Constitution from authorizing the infliction of exemplary damages for a wrong which was also punishable as a crime.

Whatever may be thought of the rule, so far as it rests on judicial construction, in the opinion of the writer, it is not the part of it which denies the infliction of punitory damages in some cases that is open to criticism, so much as that which permits it in any civil case. The assumption that the penal code should be supplemented by *quasi* judicial legislation, so as to allow damages to the injured party by way of punishment of the wrong-doer, in cases where none is in-

flicted by legislative enactment, is, as. it would seem, much less defensible than the denial either to the courts or Legislature of the right to add unlimited damages as a punishment in civil cases where a prescribed punishment is already attached to the offence.

Whether the provision that "No person shall be put in jeopardy twice for the same offence" has.technical application to the infliction of punishment by way of exemplary damages in civil cases, so as to prohibit it, has been the subject of much learned discussion.

In *Taber* v. *Hutson, supra,* after suggesting that to allow exemplary damages might expose the defendant to double punishment, in violation of the spirit of the Bill of Rights, it was said that "though that provision may not relate to the remedies secured by civil proceedings, still it seems to illustrate a fundamental principle inculcated by every well regulated system of government, viz., that each violation of the law should be certainly followed by one appropriate punishment and no more."

In the case of *Brown* v. *Swineford,* 44 Wis. 282 (28 Am. R. 582), RYAN, C. J., impliedly admitting that the rule which allowed exemplary damages in such cases was against the spirit of the maxim that no one should be twice vexed for the same offence, said: "The word *jeopardy* is therefore used in the Constitution in its defined, technical sense at the common law. And in this use it is applied only to strictly criminal prosecutions by indictment, information or otherwise." Expressing marked disapprobation of the rule, the learned court nevertheless held that a constitutional provision, similar to that under consideration, did not stand in the way of allowing exemplary damages in civil suits, even when the act complained of was punishable as a crime. So, in the case of *Elliott* v. *Van Buren,* 33 Mich. 49 (20 Am. R. 668), speaking upon this subject CAMPBELL, J., said: "The argument that a person is thereby punished twice within the constitutional and common law rules is, in our opinion, entirely fallacious. The

maxim at common law, that no one shall be twice vexed for the same cause, where it applied at all, prevented a second prosecution as well as a second punishment, and if it applied to civil damages would cover the whole, and not merely what is assumed to be a part of them. But there is no analogy between the civil and criminal remedies. The punishment by criminal prosecution is to redress the grievance of the public, while the civil remedy is for private redress."

With great respect for the learned judges from whose opinions we have quoted, we are nevertheless not persuaded to adopt either the reasoning so cogently set forth or the conclusions reached. Whatever may be said in respect of the technical application of the constitutional provision which prohibits double punishment for the same offence to civil remedies, it is difficult to see how the practical result is in any degree mitigated, if in fact, after all other proper elements of damage are considered and allowed in a civil case for a tort for which the defendant is liable to be punished criminally, the jury may assess an unlimited sum as punishment by way of exemplary damages.

It is no answer to the constitutional guaranty against double punishment to say that the penalty, limited and prescribed by the penal code, is to redress the grievance of the public, while the other, unlimited and undefined punishment, awarded by way of exemplary or punitive damages, is for private redress. To the extent that damages are awarded in any case for private redress, they can not be exemplary. The private injury is fully redressed when all its elements are considered and compensated for. Exemplary damages only commence at the point where full private or compensatory damages end, and so long as there remains any private injury to be redressed, no exemplary damages are or can be awarded. The result of it is that to the extent that exemplary damages are allowed in any case which is punishable criminally, the defendant is or is liable to be twice punished for the same offence, once by the State for the public griev-.

ance, and again by the injured party for example's sake, for the supposed benefit of the public, to deter others from the like offending. *Austin* v. *Wilson*, 4 Cush. 273. The fact that the damages allowed under the name of punitive or exemplary go to the benefit of the injured party, renders the punishment no less real, and as is said by a learned author, "After there has been one trial in which the moral culpability of the defendant has been tried with a view to punishment in the interest of the public, any other trial for the same purpose, whatever may be the form of the proceeding, is in substance and effect, putting the accused again in jeopardy of punishment for the same offence, and vexing him again for the same cause." 1 Sutherland Dam. 740, 741.

In *Fay* v. *Parker*, 53 N. H. 342 (16 Am. R. 270), this question was fully considered in an opinion conspicuous for its research and learning. The conclusion was there reached that the fundamental maxims of the common law, as well as the provision in the Bill of Rights, were an effectual barrier against the infliction of punitory damages in a civil case where the defendant was subject to be criminally punished for the same offence. FOSTER, J., delivering the judgment of the court, said: "These maxims apply both to criminal and civil proceedings. * * * If, then, this constitutional prohibition of a double penalty is indeed nothing more than an affirmation of the general principle of the common law, applicable alike to civil and criminal cases, making a judgment in one action a bar to another action, founded on the same cause, it follows, logically, that punitive damages are a violation of the general principle of the common law as well as of the Constitution." In further illustration the learned judge said: "Just as firmly is the right secured to him, that in all cases wherein he is charged with conduct such as calls for punishment for the sake of public vengeance or public example (and to him it can make no difference, so long as the blow must fall, whether it comes from the arm of the civil or the criminal law), that he shall be permitted to confront his accusers and their witnesses face

to face, and not be tried upon depositions, and that he shall go free unless his guilt is proven beyond a reasonable doubt."

This much by way of a re-examination of *Koerner* v. *Oberly, supra,* seemed proper with a view of determining the ground upon which the decision in the case before us should rest, and upon the assumption that the statute there in question authorized the infliction of unlimited, unrestricted exemplary damages as a punishment for an offence which was also made punishable as a crime, we adhere to the ruling in that case with renewed confidence.

It can not be said that where the Legislature has prescribed one definite penalty as the punishment for an offence, it may, in addition, authorize the injured party, under the guise of exemplary damages, to subject the offender to another uncertain, indefinite punishment which is to be measured only by the varying and unrestrained discretion, or it may be passion, of the jury. If the provision that "No one shall be put in jeopardy twice for the same offence" is, as this court has recognized it to be, a sure protection against the power of the courts in that regard, it must be deemed equally potential against the power of the Legislature. It can not be maintained in reason that it shall be interpreted to mean that the courts can not adjudge a second punishment for the same offence except when expressly authorized by the Legislature, for the reason that in so far as the Legislature attempts to authorize such second punishment, the barrier of the Constitution is as effectual against it as it is against the court.

While the foregoing considerations lead us to adhere to the ruling in *Koerner* v. *Oberly, supra,* they at the same time direct us to the conclusion that the act here in question is not obnoxious to the objection claimed. The distinction between the case relied on and that under consideration is, that in the first the Legislature, after affixing to the offence a prescribed punishment, undertook to authorize the recovery of exemplary damages, which, as we have seen, implies nothing less than a second punishment for the same offence by way of un-

restricted damages for the sake of public example. In the statute here involved, the Legislature has done nothing more than to fix or measure by a definite sum the amount which the injured party shall be entitled to recover on the official bond of the public officer. While the act of taking or making the unlawful charge or demand is made a misdemeanor, punishable by a fine to the State, the Legislature, not by way of additional or double punishment, but for the purpose of defining the liability of the officer to the injured party, has provided that he shall be liable on his official bond in five times the amount of the fees illegally charged, demanded or taken. In such a case, it can be truly said that "the punishment by criminal prosecution is to redress the grievance of the public; while the civil remedy is for private redress."

The legislative assumption is, that the injury done by the public officer who makes the illegal charge, will not be adequately compensated by leaving the parties to their common law rights and liabilities, and accordingly it has provided what in its judgment would be adequate compensation to the one and fixed the just liability of the other. There is in this no element of exemplary or punitory damages.

It can not be said that part of the recovery is allowed by way of example, or for the punishment of the offender, when it is apparent that the legislative purpose is nothing more than to fix the amount of the civil liability of the officer as a measure of compensation for the injury. Who shall say that a person, from or against whom an inconsiderable sum is illegally demanded or charged by an officer who is armed by law with compulsory process to enforce his demand, such person being obliged to incur the expense of a suit to redress his grievance, is more than compensated by a recovery of five times the amount so charged, demanded or taken? This is the measure of recovery fixed in all cases, and no circumstances of fraud, malice or oppression can make it greater.

While it may be conceded that the statute which thus fixes the amount is in a sense penal, the penalty prescribed is nev-

·ertheless fixed by way of compensation for the injury sustained, and to fix the liability of the officer on his bond, executed to the State, for the injurious act. The whole penalty prescribed for the offence, taking the statute altogether, is the fine prescribed to the State, and the liability on the official bond fixed by way of recompense to the injured party, and even regarding the whole statute as penal it can not be said that the person offending has been put in jeopardy of the penalties prescribed until he has been tried for the misdemeanor, and has also answered for the penalty fixed to the injured party as his compensation.

Statutes which fix or limit the amount of recovery which may be had, by way of compensation on the bond of a public officer, or by way of redress for an injury sustained by the tortious act of another, are one thing, while those which provide for unrestricted exemplary damages, by way of public example, after the injured party has been allowed full compensation, are quite another. As was said in *Blatchley* v. *Moser*, 15 Wend. 215: "The one may be said to be a private remedy, the other a public one for the same offence."

All criminal punishment is of necessity punitory and in a degree exemplary, and when an offender is made the subject of example by being once punished criminally, and is again subjected to exemplary damages in a civil suit for the same offence for a public example, he is put to the hazard of being set up as an example twice for the same offence. Where, however, a statute makes certain conduct a misdemeanor, and annexes to it a prescribed fine to the State, and also provides that the wrong-doer shall be liable to the injured party in a fixed or limited sum, it is certain from the beginning what the consequence of the offence may be, and there is no possibility that the penalties may overlap each other so as to put him in jeopardy of being tried twice, or suffering double the punishment prescribed for the same offence. Of the power of the Legislature to fix the amount of liability on an offi-

cial bond, recoverable as compensation by the person injured, there can be no question, and this power is not affected by the consideration that the act out of which the liability grows is also punishable criminally; nor can it be doubted that it has the power to prescribe fines and penalties against certain acts, and at the same time fix or limit the civil liability for the same acts.

The next objection urged against the complaint is, that the statute imposing the liability sued for not having been enacted until after the bond in suit was executed, it is contended that it was not competent for the Legislature to increase the common law liability after its execution. Section 5528, R. S. 1881, which was in force at the time the bond was executed, and which, by force of law, became a part of it, provides that "All official bonds shall be payable to the State of Indiana, and every such bond shall be obligatory to such State upon the principal and sureties, for the faithful discharge of all duties required of such officer by any law, then or subsequently in force, for the use of any person injured by any breach of the condition thereof."

Section 5534 makes the sureties on an official bond liable as principals, and prohibits them from making any defence which would not be available to the principal.

It has been held, as the statute plainly implies, that, by force of section 5528, a permanent, continuing liability is created against the officer and his sureties, as well for the failure to discharge any duty imposed by existing law, as for duties required under laws subsequently enacted. *Davis* v. *State, ex rel.,* 44 Ind. 38; *State, ex rel.,* v. *Davis,* 96 Ind. 539.

One of the duties which the law subsequently enacted imposed upon the officer was, that he should not charge, demand or take more than the fees specified, and for violating this duty a certain liability was imposed, recoverable on his bond. This it was competent for the Legislature to do.

Another objection insisted on is that it does not appear from the averments in the complaint that the illegal fees

charged were for "official acts done or performed under the provisions of this act."

The averments in that regard are that Stevens was clerk of the Decatur Circuit Court; that upon the dismissal of a certain action pending in that court against the relator, "said Stevens made up and stated upon the fee-books of said court his taxation of the costs in said case against the said Scobey, due to himself as such clerk of said court, therein claiming due him for his costs in said case against said Scobey for his services therein as such clerk a large sum" in excess of the amount legally due. We think it sufficiently appears from these averments, that the fees illegally charged were for acts done in his official capacity as clerk.

There is no force in the objection that the suit on the bond for illegal fees is a collateral attack on the judgment for costs, and that the complaint was for that reason subject to a demurrer. It may be true that as between the parties to a judgment, that part of it which is for costs can not be impeached collaterally any more than the other, the remedy being by motion to re-tax, but a failure to do so can not relieve an officer from his statutory liability if he has in fact charged, demanded or taken illegal fees.

The next and last objection made to the complaint is that the action is for a forfeiture or penalty, and not having been commenced within two years from the date at which the cause of action accrued, it is claimed that it is barred by the first clause of section 293, R. S. 1881, which requires actions for the recovery of a forfeiture or penalty to be commenced within two years. The second clause of the same section provides that "All actions against a sheriff, or other public officer, or against such officer and his sureties on a public bond, growing out of a liability incurred by doing an act in an official capacity, or by the omission of an official duty," shall be barred within five years.

While it may be said that the amount fixed as compensa-

The State, *ex rel.* Scobey, *v.* Stevens *et al.*

tion to the injured person, and as the measure of the officer's liability is to a degree in the nature of a penalty, it is nevertheless a liability incurred by doing an act in an official capacity, for which the officer is made liable on his bond, and it is therefore within the terms of the second clause of section 293, above set out.

The cause of action accrued on the 31st day of July, 1879, the date when the illegal fees were charged or taxed, and as the action was commenced within five years from that date, it was not barred.

Judgment reversed, with costs.

Filed Sept. 17, 1885.

## Dissenting Opinion.

Elliott, J.—I concur in the conclusion reached, but I do not agree to all of the reasoning of the prevailing opinion, nor assent to all of the propositions laid down. My opinion is that the question is purely one of legislative power, and that the Legislature may provide for the recovery of punitory damages in cases where an injury is caused by an illegal act, although the same illegal act may subject the defendant to a criminal prosecution. As the Legislature has this power unabridged by constitutional limitation, it has the authority either to limit the amount to be recovered, or to leave it to be ascertained upon a trial. It is not a question for the courts whether the power is wisely or unwisely exercised; the only question for the courts is, Does the power exist and has it been exercised? Once the power is found to exist, all questions of policy and wisdom in its exercise pass outside of the judicial department of the government.

Filed Sept. 17, 1885.