ANTON YESEL, by His Guardian ad Litem, S. E. Klein, Respondent, v. GEORGE WATSON and State Bonding Fund of the State of North Dakota. GEORGE WATSON, Appellant.

(64 A.L.R. 929, 226 N. W. 624.)

Opinion filed August 16, 1929.

Senn & Casey and Robert H. Bosard, for appellant.

·E. R. Sinkler, G. O. Brekke and Harold B. Nelson, for respondent.

BIRDZELL, J.   This is an action against a defendant, who was sheriff of Pierce county, and the state bonding fund, to recover damages for false arrest and for assault.   The plaintiff alleges in both counts that the officer was bonded in the state bonding fund in the sum of $10,000 in accordance with the terms and provisions of chapter 158, Session Laws of 1919.   A copy of the plaintiff's claim against the fund in the sum of $10,000 is attached to the complaint and incorporated therein by reference.   Separate answers were interposed by the defendants and the action was tried in the district court of Ward county before a jury.   A verdict was returned for $3,000 and interest from March 23, 1926, upon which a judgment was entered for $3,446.70, which included the costs.   Thereafter the defendants moved separately for a new trial.   The motion of the state bonding fund was granted and that of the individual defendant was denied.   The instant appeal is from the judgment and from the order refusing to vacate the same and grant the individual defendant's motion for a new trial.   The plaintiff likewise appealed from the separate order of the court granting the motion of the state bonding fund for a new trial, but the record contains an order for judgment and the judgment entered pursuant thereto showing an amicable adjustment of the plaintiff's claim against the bonding fund by the latter paying to him $1,000, the bonding fund waiving its right of subrogation to such claim against the defendant and being released from further liability, the release being "without prejudice to plaintiff's rights against the defendant George Watson."

The record shows that in instructing the jury the court, after outlining the issues, stated it was admitted that the individual defendant at the time of the injuries complained of had a liability bond in the sum of $10,000 with the state bonding fund and that that bond was in full force.   The court charged fully upon the right of the sheriff to make an arrest, stating the circumstances in which he might arrest without a warrant.   Likewise, the instruction covered fully the circumstances in which the individual defendant might be liable for an assault.   Then, in instructing upon the question of damages, the court said, in substance, that if the jury should find for the plaintiff they

should allow him such damages as he had actually sustained; that in estimating the damages accruing from the alleged assault it was not necessary that any specific sum should have been named or stated in the evidence; that they might consider bodily and mental pain and the shame, humiliation and loss of reputation, if any was shown, and give to the plaintiff such damages as he had actually sustained; that in addition to this when a defendant has been guilty of oppression or fraud or malice, actual or presumed, the jury, in addition to actual damages, might give damages for the sake of example and by way of punishment; that if the jury should find for the plaintiff on either or both of the causes of action they should assess his compensatory damages for such sum as would compensate him for his injuries and physical and mental suffering, if any; and, if they found the defendant to have acted oppressively or maliciously and with a purpose to vex and annoy the plaintiff, they might assess a further sum by way of punitive damages at such sum as in their judgment would be a warning. Then the court said "in this case, gentlemen, there are two defendants. I instruct you that if you find for the plaintiff and against the defendants, your verdict should be against the defendants jointly." Two forms of verdict were submitted. The form to be used in case the jury should find for the plaintiff contained a blank for the insertion of the amount of damages with no indication that there should be separate assessments of the compensatory and punitive damages; the other form to be used in case they found for the defendants.

In ruling on the motion for a new trial, the court in a memorandum opinion referred to the fact that there was a general verdict for the actual and exemplary damages and held that in the absence of a request to separate these two items it was not error as to the defendant Watson but that it was error as to the state bonding fund. It was the opinion of the court that the bonding fund could be held only for the part of the judgment that represented actual damages. It was held that the defendant Watson was not prejudiced because of the fact that the actual and punitive damages were lumped but that, inasmuch as there had been no determination as to the amount of damages for which the bonding fund was liable, it was entitled to litigate that question and a new trial was ordered in its favor.

Respondent's counsel are correct in their contention that the merits

of the order granting a new trial to the bonding fund are not directly involved upon the present appeal of Watson, but it docs not follow that the correctness of the order denying a new trial as to Watson is not in a measure dependent upon the character of the liability sought to be enforced and the proceedings instituted by the plaintiff. If, for instance, both the bonding fund and the individual defendant were liable in this action for punitive damages and the court granted a new trial to the bonding fund on the erroneous assumption that it was not so liable, the individual defendant might not be prejudicially affected. But if, on the other hand, the bonding fund is not legally answerable for punitive damages and if the proceedings had to enforce the liability against it are such that neither defendant was called upon to meet any claim for other than compensatory damages any defendant might be prejudicially affected by instructions which authorized recovery from him of an amount more than sufficient to compensate the plaintiff for his injury. The authorities abundantly support the ruling of the trial court to the effect that one who is liable for the act of another by reason of being surety upon his official bond is not answerable for punitive damages that might be recoverable against the wrongdoer. Phillips v. Morrow, 210 Ala. 34, 97 So. 130; Constantine v. Rowland, 147 Iowa, 142, 124 N. W. 189; Johnson v. Williams, 111 Ky. 289, 54 L.R.A. 220, 98 Am. St. Rep. 416, 63 S. W. 759; Growbarger v. United States Fidelity & G. Co. 126 Ky. 118, 11 L.R.A.(N.S.) 758, 128 Am. St. Rep. 274, 102 S. W. 873; North v. Johnson, 58 Minn. 242, 59 N. W. 1012; Lizana v. State, 109 Miss. 464, 69 So. 292; Hixon v. Cupp, 5 Okla. 545, 49 Pac. 927; Hamilton v. Kilpatrick (Tex. Civ. App.) 29 S. W. 819; McArthur v. Barnes, 10 Tex. Civ. App. 318, 31 S. W. 212; McMulin v. Ellis (Tex. Civ. App.) 48 S. W. 217; 17 C. J. 988; Sutherland, Damages, 4th ed. § 488.

We think this rule applies with peculiar force where the surety is a state fund created by compulsory assessments against the public corporations served by the insured officers or employees. The liability or condition clause of the statute binds the officer and the fund to a faithful and impartial discharge of the duties of the office or employment and to the rendition of a true account of all moneys and property that shall come into the hands of the former and to pay

over and deliver the same according to law. Section 200b6, 1925 Supplement to the Compiled Laws of 1913. It authorizes (§ 200b7) any person injured by such default to file with the commissioner a claim against the state bonding fund and all claims against the fund are required to be audited (§ 200b9) by a board consisting of the commissioner of insurance, the state examiner and the attorney general.

It would seem to require no argument to demonstrate that there is in the statute referred to no indication of a legislative intention that the insurance commissioner or the auditing board should sit in judgment upon a question of how much smart money should be paid out of the public fund on account of the malicious or wilful act of a public officer or employee. The very purpose said to underlie the recovery of exemplary damages is to punish the wrongdoer and were its recovery not attended by this supposed virtue punitive damages would long since have fallen into the discard with other forms of punitory remedies. At best punitive damages are grudgingly sanctioned in modern courts. They are deservedly unpopular in the halls of justice and are properly confined within the narrowest limits. There is no reason to believe that the principle of punitive damages was so favored by the legislature that it deliberately authorized the taxpayers to be punished on account of the misdeeds of public servants. The legislation is concerned only with the making of full compensation for any actual injuries sustained. Clearly, exemplary damages are not recoverable from the state bonding fund.

To make effective the remedy of the injured party, the bonding fund act provides (§ 200b10) that he may sue the public employee and join the state bonding fund as co-defendant. It further provides "and in case judgment is obtained against such public employee, the judgment shall further specify that such judgment shall be paid out of any funds on hand in the state bonding fund, or that may thereafter accrue to such fund. In case a judgment is paid out of the state bonding fund in any such action, the state bonding fund shall be subrogated under the judgment to the right of the judgment creditor to recover against such public employee." In the instant case the plaintiff did join the state bonding fund and the case was tried and the jury instructed on the theory that the liability of the bonding

fund was being determined. Both the individual defendant and the bonding fund were regarded throughout as being equally liable for the amount recovered. The action was such an action as is contemplated by this provision of the statute. No judgment could be entered in accord with the statute that would not secure to the bonding fund the right of subrogation. We are clearly of the opinion that any injured party seeking to take advantage of the statutory means of enforcing the liability of the bonding fund by action, particularly where the pleadings do not seek to differentiate between the liability of the individual defendant and the fund for any recovery above that necessary to compensate the injured party, waives his claim to punitive or exemplary damages.

The proceedings in the instant case with reference to the settlement of the liability of the bonding fund after a new trial had been granted to it, forcibly indicate the necessity for adhering to the policy evidenced by the statute in question. After a new trial had been granted to the bonding fund, which authorized all the issues to be contested anew and the amount of actual damages alone established, it settled its liability by the payment of $1,000. But, in doing so, it stipulated to waive its right of subrogation. This can only mean that the bonding fund would stand aside while the plaintiff was attempting to recover his judgment of approximately $3,500 against the individual defendant. If the means of the individual defendant be so limited that he cannot meet both the compensatory and exemplary damages, the bonding fund would suffer by being deprived of the statutory right of subrogation while the plaintiff is exhausting the property of the individual defendant in collecting smart money. Yet the mandatory language of the statute is that the bonding fund shall be subrogated. As the plaintiff sought the same judgment against both defendants and as the only permissible judgment against the fund is one limited to actual damages, with a right of subrogation, the recovery of punitive damages is necessarily waived for the purpose of the suit. Any instruction, therefore, that permits damages to be assessed in addition to those legally recoverable in the action is prejudicial, regardless of whether the damages be such as might have

been awarded against a guilty defendant in another action or even by separate verdict, under different pleadings, in the same action.

Counsel for the respondent rely upon Voves v. Great Northern R. Co. 26 N. D. 110, 48 L.R.A.(N.S.) 30, 143 N. W. 760, as authority for the affirmance of the order denying a new trial to the party whose conduct might have justified an assessment of punitive damages, notwithstanding the error in the instructions from the standpoint of a codefendant not so liable. True, in that case a judgment against a railway conductor guilty of an assault was affirmed, while the company was granted a new trial by reason of the error in the instructions permitting a recovery of punitive damages against it. The main question considered in the case, however, was whether or not the company was liable for exemplary damages. The total damages awarded by the verdict amounted to but $200.00, and it is difficult to conceive that any prejudice could have resulted to the guilty defendant by reason of the instructions. Furthermore, the case is readily distinguishable from the one at bar by reason of there not being involved in that case any question concerning the employment of a statutory remedy. The court found no occasion to consider and weigh the diverse rules according to which exemplary damages may be assessed, either according to the acts of the most innocent of the defendants, or according to the amounts which the most culpable should pay (see 17 C. J. 789); or whether differences in financial condition of the several defendants might justify the imposition of different amounts as punishment. Nelson v. Halvorson, 117 Minn. 255, 135 N. W. 818, Ann. Cas. 1913D, 104. Neither do we here have occasion to consider such questions. We express no opinion as to whether the guilty defendant, in a case where punitive damages are recoverable, would be prejudiced by being compelled to pay a judgment which included such damages assessed under instructions erroneously authorizing both defendants to be penalized.

The judgment and order appealed from are reversed and a new trial granted.

In view of the facts contained in the record relative to the settlement of the controversy so far as the state bonding fund is concerned, we deem it proper to say that, so long as that settlement stands, no amendment of the pleadings should be permitted which would au-

thorize recovery of punitive damages against the individual defendant, and the defendant will, of course, be entitled to credit upon any judgment obtained against him the amount so paid by the bonding fund.

BURKE, Ch. J., and CHRISTIANSON and NUESSLE, JJ., concur.

BURR, J., did not participate.