## FARMERS STATE BANK OF VAN HOOK, NORTH DAKOTA, a Corporation, Respondent, v. B. W. CRANDELL, as Sheriff of Dickey County, North Dakota, and State Bonding Fund of the State of North Dakota, as Official Bondsmen of the Said Sheriff, Appellants.

(236 N. W. 264.)

620

Opinion filed April 15, 1931.

*James Morris,* Attorney General, and *Harold Shaft,* Assistant Attorney General, for appellant State Bonding Fund.

*Whipple & Perry* and *T. L. Brouillard,* for appellant B. W. Crandell.

*F. F. Wyckoff,* for respondent.

BIRDZELL, J. This is a proceeding, under § 7770 of the Compiled Laws of 1913, to amerce a sheriff for failure to return an execution. The sheriff was bonded in the state bonding fund and the fund was a party to the proceeding. It stipulated to be bound by such judgment against it as may be warranted by the facts and the law and waived its rights to a separate trial upon the question of its liability. The judgment of the lower court went against both the sheriff and the bonding fund. Separate appeals have been taken.

The facts necessary to an understanding of the questions presented upon the appeal may be briefly stated as follows: The plaintiff in a foreclosure suit brought in Mountrail county against Hulda Korpua Hendrickson, formerly Hulda Korpua Johnson, and John J. Korpua, had obtained a judgment in the sum of $5977.01. The judgment directed the sale of the mortgaged premises, consisting of a quarter section of land in Mountrail county and the application of the proceeds to its satisfaction. This was done, the net amount received through such sale being $1,688.18, leaving a balance due the plaintiff of $4,-288.83. The judgment was docketed in the office of the clerk of the district court of Dickey county, where it remained of record unsatisfied. After applying the proceeds of the sale of the Mountrail county land, the judgment creditor took out an execution dated the 25th day of September, 1929, directed to the sheriff of Dickey county, requiring him to satisfy the judgment by the sale of any property of the judgment debtors in Dickey county and to return the execution within sixty days. The execution bears the receipt of the sheriff B. W. Crandell,

by F. R. Brokaw, deputy, dated the 26th day of September, 1929, and a return likewise in the name of the sheriff, by F. R. Brokaw, deputy, dated December 13, 1929. The return recites the receipt of the execution and its service on the defendants, no date of service being given, and contains this expression: "but could find no property either personal or real subject to execution so am returning the execution unsatisfied." The motion to amerce was supported and resisted by affidavits showing the above undisputed facts. They also disclose a dispute as to the cause of the failure to make the return within the sixty-day period. The affidavits are too lengthy to be reproduced here, so we shall attempt merely to state the substance of the controverted facts. It appears that the judgment debtors were represented by James M. Austin, an attorney at Ellendale, Dickey county; that after the sheriff received the execution he made a search of the records but found no property standing in the name of the judgment debtors. He found, however, records of chattel mortgages against the property of the judgment debtor Korpua in the sum of approximately $10,000. While Crandell was making search for property of the debtors upon which to levy the execution, he conferred with Austin, who advised him to hold the execution for a while before returning it unsatisfied as he believed the defendants were about to redeem the quarter section of land in Mountrail county and that they would then turn or attempt to turn this land over to the plaintiff in settlement of the judgment. About the 15th of October Crandell talked with the plaintiff's attorney on the telephone, telling him of the search he had made for the property and of the prospect for a settlement through redemption of the Mountrail county land. He had another conversation with the plaintiff's attorney shortly after the expiration of the sixty-day period for making the return. Crandell asserts in his affidavit that in both of these conversations the prospects of a settlement were referred to; that the attorney for the plaintiff made no objection "and consented that the said execution be held by the sheriff in order to ascertain whether or not a settlement could be made." He likewise denies that he was influenced by Austin in refraining from making any levy. The plaintiff's attorney, by affidavit specifically denies that in telephone conversation with the sheriff he had made no objection to delaying the making of a levy and denies that he had consented that the execution be

held by the sheriff in order to ascertain whether or not a settlement could be made. He says he stated to the sheriff that no settlement could be made and instructed him to make a levy under the execution and to make his return. He also denies that the sheriff stated to him that he was holding the execution in an effort to get the settlement proposed by Austin. In one such affidavit made and filed by Wyckoff, he sets forth the history of the foreclosure suit, showing that there had been considerable delay in getting the final judgment due to representations made by the attorney for the defendants, resulting in opening up default judgments, obtaining continuance, etc., and the ultimate entry of judgment without the presentation of any substantial defense, —these circumstances being set forth as corroborative of the belief asserted by plaintiff's attorney that any proposition advanced by Austin was being made for the purpose of further delay rather than in a good faith effort to obtain a settlement and of the direction which he claims was given at the time to proceed under the execution without further delay.

The principal issue of fact in these proceedings is that which is presented by these conflicting affidavits with respect to the character of the representations made regarding settlement and as to whether plaintiff's attorney did in fact consent to a delay in making the return.

After the return was made and on December 26, 1929, the plaintiff's attorney wrote the sheriff as follows:

"I am in receipt of your letter of the 13th of December returning to me the execution in the case of Farmers State Bank vs Korpua in which you state that you have been unable to find any property. It is needless to say that I am disappointed and dissatisfied with this matter as you advised me by phone sometime ago that Mr. Korpua's attorney had promised to make a settlement if you would delay making any levy. I wish you would kindly advise me at once just what his agreement was and whether he has said anything now about making settlement. Please let me hear from you immediately."

The district judge, in disposing of the motion, wrote a memorandum opinion in which, after stating that the court took judicial notice of its own record, he said: "This record, coupled with the admission of the defendant that the judgment debtor's attorney prevailed upon the sheriff not to levy the execution in the first instance, leaves no doubt

in the mind of the Court that the plaintiff's attorney had nothing to do with the delay." Findings of fact were made, in which there is a specific finding that the failure of the sheriff to make a levy and return within sixty days after the receipt of the execution was without the consent or acquiescence of the plaintiff.

There is a further showing in the affidavits filed on behalf of the defendant to the effect that, on account of injuries received by the sheriff in an automobile accident, he was incapable of attending to the duties of his office during a large portion of the period in which the execution was held in his office, particularly during the last thirty days before the return date.

In the first case in which this court had occasion to consider the amercement statute, it was interpreted, in accordance with its obvious meaning, to authorize a summary proceeding penal in character predicated upon a non-performance of official duty (Lee v. Dolan, 34 N. D. 449, 158 N. W. 1007), and it was sustained against an attack directed to its validity under the constitution. The opinion in that case points out that the statute provides for a harsh remedy and that if the policy of permitting such a harsh remedy is to be departed from it is incumbent upon the legislature to change the statute, that the court cannot do so through interpretation clearly contrary to the plain meaning, but that the court, though reluctant, is compelled through a sense of duty to enforce the statute as it exists. Since that decision the statute has been in no wise changed.

The appellant contends that owing to the harshness of the remedy it should not be applied except where the plaintiff brings himself clearly within the statute by showing beyond reasonable question that there has been a neglect to execute the writ or to return it within the time provided. Or if such neglect was in any way attributable to the plaintiff's direction or acquiescence, he should be precluded from enjoying the advantage given by the statute. Solberg v. Rettinger, 40 N. D. 1, 168 N. W. 572; Farmers Nat. Bank v. Wright, 54 N. D. 422, 209 N. W. 796. In the latter case this court said (page 427 of the state reports):

"The proceeding is summary in character; the sheriff may be mulcted in substantial damages upon a motion and without the right to a trial by jury. The evidence ought to be clear and convincing; the record

should not present substantial doubts of the propriety of amercement because of the conduct of the plaintiff which may have caused the failure to promptly file a return. The underlying theory is that the officer has been guilty of a breach of duty for which no legal excuse has been offered. If the failure to make the return be in any sense due to the conduct of the judgment creditor, or if it was induced by him, he may not afterwards base a cause of action in amercement upon the delinquency."

In that case there were circumstances set forth by affidavit which strongly indicated that agents of the plaintiff were responsible for the failure to make a timely return. There were third party and exemption claims filed. There was talk between the plaintiff's agent and the sheriff regarding an indemnity bond, and this bond was not filed until after the time for making the return.

Likewise, in Solberg v. Rettinger, 40 N. D. 1, 168 N. W. 572, supra, there was ample evidence to show that the sheriff was following the instructions of the plaintiff's attorney and acting in the interest of the plaintiff in failing to return the execution within the statutory period. In the instant case it stands undisputed that the first suggestion of delay in proceeding under the execution came from the attorney for the judgment debtors. It does not appear that the sheriff requested or acted upon any additional instructions of the judgment creditor or his attorney. At most his affidavit would indicate that the plaintiff's attorney became interested in a proposed settlement first communicated to him by the affiant, but there is nothing to indicate that such settlement was contingent upon delay in proceeding under the execution beyond the statutory return date. Acquiescence is a mere conclusion, not shown to result from any specific direction or from any measures to be taken in the interest of the judgment creditor. The weakness of the showing in this respect appears from the following paragraph in the sheriff's affidavit:

"That about the 15th day of October, A. D. 1929 the affiant had a telephone conversation with F. F. Wyckoff the attorney for the plaintiff in which talk he informed the said attorney as to what he had done and of the prospects of a settlement, that later he had another telephone conversation with the said Wyckoff on the 29th day of November, 1929, that in each of these telephone conversations it was made

known to the said attorney for the plaintiff that there was a prospect for a settlement and the attorney for the plaintiff made no objection to the proceedings and consented that the said execution be held by the said sheriff in order to ascertain whether or not a settlement could be made."

The second telephone conversation referred to, it will be noted, is fixed at a date subsequent to the expiration of the sixty-day period for making the return. Under the showing made we think it clear that the failure of the sheriff to make a return as required by statute is in no way attributable to the plaintiff.

It is contended that the defendant should not be held liable in the amercement proceeding because of the physical inability to perform the duties of his office during the latter portion of the sixty-day period. We think there is little merit in this contention in view of the fact that the sheriff was provided with a deputy. The deputy receipted for the execution, conducted some correspondence regarding it and ultimately made the return which was made. No reason is apparent why every official function regarding this execution could not have been performed as required by law, notwithstanding the personal misfortune of the sheriff.

On behalf of the state bonding fund it is earnestly contended that the fund is not liable for the statutory penalty. The argument is that § 7775, Compiled Laws of 1913, which specifically authorized the surety of the sheriff to be made a party to the judgment rendered against the latter in amercement proceedings is not applicable to the state bonding fund when it is the surety. It is said that the provisions of the bonding act constitute the entire contract (§ 200b5 of the 1925 Supplement to the Compiled Laws of 1913); that the condition of the bond is only that the principal shall faithfully and impartially discharge the duties of his office and shall render a true account (§ 200b6); that nowhere in the bonding statute is there any provision covering any penalties that may be incurred by reason of the failure of the officer to perform his duty, but that, on the contrary, the measure of damages for which the fund is liable is specifically limited to actual loss by §§ 200b7 and 200b10. Since § 200b22 repeals all acts and parts of acts in so far as they are in conflict with the bonding act, it

626

is contended that § 7775 of the Compiled Laws of 1913 is necessarily repealed as to bonding fund liability.

We have held that the bonding fund is not liable for punitive damages (Yesel v. Watson, 58 N. D. 524, 64 A.L.R. 929, 226 N. W. 624), but this result is based largely upon the general principle that private sureties on official bonds are not liable for exemplary damages and that the bonding law does not extend the liability. While amercement is a harsh remedy and somewhat penal in character, there is nevertheless a marked distinction between it and an award of exemplary or punitive damages. The amercement is limited to "the amount of said debt, damages and costs with 10 per cent thereon," whereas punitive or exemplary damages, where recoverable, are assessed at the discretion of a jury "for the sake of example and by way of punishing the defendant." (Comp. Laws of 1913, § 7145.) It is and must be conceded that a private surety may be held for the amount of the judgment rendered in amercement proceedings against the sheriff. The general statute governing amercement specifically so provides. (Comp. Laws of 1913, § 7775.) If the bonding act be so construed as to render this statute inapplicable, it would necessarily follow that there would be a different rule governing liability of the bonding fund than would govern in the case of private or corporate sureties. The bonding act contemplates that a public officer may be furnished with a bond thereunder or that he may furnish a private or surety company bond. (§§ 200b12 and 200b14.) In so far, therefore, as official bonds furnish protection to those affected by the acts or neglects of the officer, it would seem that the bonding fund is regarded as the equivalent, at least, of either a private or surety company bond. The liability in any event is predicated upon the failure of the principal to "discharge and perform the duties of his said office or employment including such duties as are or may be imposed upon him by law." For some defaults there is an express law imposing a limited liability in amercement proceedings. And there is another law which provides expressly for the surety being held equally liable. In our opinion, it would be a strain upon all ordinary canons of interpretation to except the bonding fund from a liability which the statute casts upon sureties generally. The legislature in passing the bonding law must be presumed to have been familiar with the amercement statutes and we can find no provision in

the act so far inconsistent with the pre-existing statutes governing the liability of sureties as that the two cannot stand together.

It follows that the judgment must be affirmed against both the sheriff and the bonding fund. It is so ordered.

CHRISTIANSON, Ch. J., and NUESSLE, BURR, and BURKE, JJ., concur.