NATIONAL SURETY CORPORATION *v.* GATLIN *et al.*

**294**

No. 13697. MAY 22, 1941.

*Martin, Martin & Snow,* for plaintiff in error.
*Roy B. Rhodenhiser Jr.,* for person at interest.
*Johnston & Jones,* contra.

BELL, Justice. Mrs. W. H. Gatlin filed suit against W. W. Wood as ordinary of Twiggs County, and National Surety Corporation as surety on his official bond. She alleged that on November 6, 1939, Wood as ordinary issued a license for the marriage of the plaintiff's daughter Frances, who was at that time only fifteen years years of age, and Ausbon W. Cravey, both residents of Bibb County, and then and there performed a marriage ceremony between such licensees, without first posting in his office the notice required by law before issuing a marriage license, and in violation of the law in other respects stated in the petition. The plaintiff sought recovery of $500 under the law contained in the Code, § 53-208, as amended by the acts of February 28, 1939, and March 24, 1939 (Ga. L. 1939, pp. 219, 221). It appears from the petition that the bond sued on was executed on June 13, 1938. The surety corporation filed a general and special demurrer, contending, among other things, that under the law as it existed at the time this bond was executed a surety on the bond of an ordinary could not be held liable for the penalty imposed by § 53-208, supra, the offending officer alone being liable therefor; and that in so far as the amendatory statutes purported to impose such liability upon sureties, they

did not apply and were not intended to apply to bonds executed before their passage; also that the provision in each as to liability of sureties is unconstitutional and void in that it contains matter different from anything expressed in the title, in violation of article 3, section 7, paragraph 8, of the constitution of this State, Code, § 2-1808. The court overruled the demurrer and the surety excepted.

The Code of 1933, § 53-208, before amendment declared that: "Any ordinary who by himself or clerk shall fail to post in his office the required notice pertaining to the application, or who shall issue a license in violation of the time provision, or who shall knowingly grant a license without the required consent or without proper precaution in inquiring into the question of minority. or who shall issue a license for the marriage of a female to his knowledge domiciled in another county, shall forfeit the sum of $500 for every such act, to be recovered at the suit of the clerk of the superior court, and added to the educational fund of the county." For the "time provision," see Code, § 53-205. Such was the law at the time the present bond was executed. It did not declare that the surety on the ordinary's bond would be liable for such penalty. Nor was there any other law expressly so providing. The bond under consideration was executed on June 13, 1938. Amendatory statutes were passed on February 28, 1939, and on March 24, 1939. Still later, on November 6, 1939, as it is alleged, the ordinary committed the wrongs for which the forfeiture is claimed.

The caption of the act of February 28, 1939, was as follows: "An act to amend section 53-208 of the Code of 1933 by striking in the last two lines of said section the words 'at the suit of the clerk of the superior court, and added to the educational fund of the county,' and inserting in lieu of such stricken words a provision so as to permit the bringing of the suit under this section by the father or mother, if living, and, if not father or mother, the guardian or legal representative of either of such contracting parties; to provide that only one suit can be maintained in connection with any one marriage; to provide the limitation for bringing such action; to provide for the disposition of the forfeiture; and for other purposes." Under the former law, only the clerk of the superior court could have sued to recover the penalty, and the sum recovered would have been added to the educational fund of the

county. Section 1 of the amendatory act provided that the father or mother of either of the parties to the marriage contract would be entitled to sue; that "a recovery shall be had against the offending ordinary and his bondsmen;" and that the recovery shall be divided equally between the person bringing the suit and the educational fund, after deducting a reasonable attorney's fee. This was the first express declaration as to liability of a surety for such penalty. The caption of the act of March 24, 1939, was as follows: "An act to amend an act approved February 28, 1939, which amended section 53-208 of the Code of 1933, by striking the last sentence of section 1 of said act and substituting in lieu thereof a new sentence so as to provide that, from the recovery had against the offending ordinary, court costs and attorney's fees to be first paid, and one third of the remainder shall be paid to the person bringing the suit, and the remaining two thirds shall be paid to the educational fund of the county of the residence of the ordinary; and to provide that said act shall not apply to marriages in which both parties are more than eighteen years of age; and for other purposes." This act also provided, as did the act of February 28, for recovery "against the offending ordinary and his bondsmen." It fixed, however, a different basis for division of the net proceeds, declaring that after payment of the attorney's fees and court costs the remainder should be divided: one third of the remainder to the person bringing the suit and two thirds to the county educational fund. Ga. L. 1939, p. 222.

The two sections of the Code to be next cited were in existence at the time the present bond was executed, and had been in force, in the same form, at least since adoption of the Code of 1863. The Code, § 89-418, provided that "Every official bond executed under this Code is obligatory on the principal and sureties thereon. . . 3. For the faithful discharge of any duties which may be required of such officer by any law passed subsequent to the execution of such bond, although no such condition is expressed therein. 4. For the use and benefit of every person who is injured, either by any wrongful act committed under color of his office or by his failure to perform, or by the improper or neglectful performance of those duties imposed by law." Section 89-421 provided: "The measure of damages recoverable in actions upon all official bonds for the misconduct of the officer, unless otherwise specially enacted, shall be

the amount of injury actually sustained, including the reasonable expenses of the suit to the plaintiff, besides the costs of court; but in all cases when little or no damage is actually sustained, and the officer has not acted in good faith, the jury may find for the plaintiff an amount, as smart money, which, taking all the circumstances together, shall not be excessive nor oppressive." Code of 1863, §§ 154, 162. Counsel for the surety corporation insist that the law as it existed at the time this bond was executed intended that a surety upon an official bond should be liable only for "injury actually sustained," except that an allowance for "smart money" might be made in certain cases; and that consequently the bond here sued on did not cover liability for the forfeiture or penalty claimed. The rule of strict construction as to liability of sureties is invoked, and emphasis laid on the fact that the law imposing such penalty, as contained in § 53-208, being a codification from statutes enacted in 1924 and 1927, did not by any express language purport to fix a liability upon sureties. Ga. L. 1924, p. 53; Id. 1927, p. 224.

There are numerous decisions to the effect that the liability of sureties on official bonds does not ordinarily include liability for mere penalties imposed upon the principals for a dereliction of official duties, but is limited to injury sustained. 46 C. J. 1071, § 405; Murfree on Official Bonds, 654; Jeffreys v. Malone, 105 Ala. 489 (17 So. 21); State v. Flynn, 157 Ind. 52 (60 N. E. 684); Yesel v. Watson, 58 N. D. 524 (226 N. W. 624, 64 A. L. R. 929, note). This is in accordance with the Code, § 89-421; for, as will be noticed, that section states the same general rule and provides for exceptions where "specially enacted." Whether section 89-418 and passage of the acts of 1924 and 1927, codified in part in section 53-208, would, without more, operate to create an exception and to render the surety liable for the penalty thus prescribed, is a question which we do not deem it necessary to decide in this case, since we have also the acts of 1939, both of which we regard as valid and applicable, notwithstanding the attacks made upon them, as hereinafter discussed. Sureties are charged with knowledge of the law in existence at the time of executing bonds, and are presumed to have acted with reference thereto. At the time this bond was executed it was the law of this State that every official bond shall be obligatory upon both the principal and his sureties, for the

faithful discharge of the official duties of the principal, whether imposed by any then existing law or by any law subsequently passed. Code, § 89-418 (3). While it was also declared that the measure of recovery shall be the amount of "injury actually sustained," yet in the same section was the proviso, "unless otherwise specially enacted." § 89-421.

So far as we have been able to ascertain, the Code, § 61-307 (Ga. L. 1878, p. 145) was the only instance where it was otherwise specially enacted at the time this bond was executed, if that provision might be so considered; and there was not a single instance at the time the foregoing general section as to measure of recovery was adopted. It would seem therefore that the proviso, "unless otherwise specially enacted," has at all times looked at least in part to the future, and especially so as it was provided at the same time that a surety would be liable "for the faithful discharge of any duties which may be required of such officer by any law passed subsequent to the execution of such bond, although no such condition is expressed therein." Code, § 89-418 (3). Since the legislature could have changed the law at any time it saw fit, without the proviso or reservation quoted, then if, as indicated, there were no exceptions to the general rule at the time it was enacted, there would have been no reason whatever for it, unless it did point to a possible future change as to liability with respect to any bond that might be executed. We are thus led to the conclusion that by such proviso and cognate provisions the surety in this case was given notice that on executing bond with the ordinary it would become liable for the faithful discharge of the duties of that officer under any law subsequently passed, and also that under some later statute it might become liable for more than the injury actually sustained. It thus consented to become liable along with the officer whose duties and responsibilities were subject to change by law, thereby contracting for the future, to the extent of such changes as would be germane, if no further; and this, we think, would include the forfeiture here under consideration. Cf. *Collins* v. *Russell,* 107 *Ga.* 423 (33 S. E. 444); 22 R. C. L. 503, § 186; Daniel v. Grizzard, 117 N. C. 105 (23 S. E. 93); Joyner v. Roberts, 112 N. C. 111 (16 S. E. 917); State v. Stephens, 103 Ind. 55 (2 N. E. 214, 53 Am. R. 482).

This brings us to the conclusion that it was competent for the

legislature to provide, as it did in the act of February 28, 1939, supra, that a recovery of the forfeiture prescribed by section 53-208, may be had "against the offending ordinary and his bondsmen," in a suit by a parent, to whom shall be delivered a part of the sum recovered. While the act provided that it should become effective on and after its passage, and did not contain any express words to indicate that it should be applied to bonds previously executed, yet it placed "the offending ordinary and his bondsmen" in the same class, and as a whole clearly indicated an intention to fix a liability upon the bond as to both, for described acts of the officer committed after its passage. We do not think it could be properly said that its operation was intended to be postponed until after the term of the officer, and if not, then under its provisions it would become immediately operative, both as to the officer and his surety, even on a bond previously executed. What has just been said will apply also to the act of March 24, 1939. In reaching this conclusion we are not unmindful of the general rule that statutes should not be so construed as to give them a retrospective operation, unless their language imperatively requires such construction (Code, § 102-104; *Walker County Fertilizer Co.* v. *Napier,* 184 *Ga.* 861 (2), 193 S. E. 770; *United States Fidelity & Guaranty Co.* v. *Toombs County,* 187 *Ga.* 544 (3), 1 S. E. 2d, 411) ; and certainly we do not overlook the constitutional provisions against passage of any law impairing the obligation of contracts. Code, §§ 1-134; 2-302. But, as indicated above, we must also bear in mind the obligation assumed by the surety at the time of executing the bond; for, under the law then in existence, it became liable for the faithful discharge of any duties which might be required of such officer by any subsequent law, and agreed in effect that the measure of liability might be changed by later statutes "specially enacted." The liability thus extended as a matter of contract to what is now claimed by the plaintiff under the act of 1939. Therefore it is our opinion that the acts of 1939 were intended to apply to bonds previously executed, and that as thus construed they are not unconstitutional as impairing the obligation of contracts. If, as we have stated, the bond contemplated such possible increase in liability, then of course the later statutes would not impair its obligations.

Counsel for the plaintiff in error rely on Hunter State Bank v. Mills, 90 Ark. 10, 15 (117 S. W. 760, 134 Am. St. R. 20), in

which it was held that the surety upon an official bond was not liable for a penalty imposed upon the principal under a statute passed after execution of the bond. We have carefully examined the decision in that case, and find that it does not refer to any Arkansas statute similar to those in Georgia (Code, §§ 89-418(3), 89-421). Also, in view of these statutes, the present case is materially different, in its legal phases, from *Morris* v. *Interstate Bond Co.,* 180 *Ga.* 689 (180 S. E. 819) ; *Atlantic Loan Co.* v. *Peterson,* 181 *Ga.* 266 (182 S. E. 15).

The next question for determination is whether the acts of February 28 and March 24, supra, in providing that a recovery shall be had against the offending ordinary and his bondsmen, contained matter different from what was expressed in the title. It should be remembered, of course, that neither of these statutes was a new and original enactment, but that each of them merely amended a previous statute; the former amending section 53-208, which itself was based on acts of 1924 and 1927 respectively; and the latter (the act of March 24, 1939) amending the act of February 28, 1939. The caption of each of these statutes contained the words, "and for other purposes." Since both of these acts merely amended others, the question as to each is whether the language contained in the body was germane to the *former* statute. *Mayor & Council of Macon* v. *Hughes,* 110 *Ga.* 795 (36 S. E. 247) ; *Hart* v. *State,* 113 *Ga.* 939 (39 S. E. 321) ; *Bitting* v. *State,* 165 *Ga.* 55, 59 (139 S. E. 877) ; *Kaigler* v. *Board of Commissioners of Quitman County,* 174 *Ga.* 849 (164 S. E. 193). Our conclusion is that neither act violated the constitutional provision that no law shall be passed which contains matter different from what is expressed in the title. Code, § 2-1808. The petition stated a cause of action, and the court did not err in overruling the demurrer.

*Judgment affirmed. All the Justices concur.*