**A.C. and J.C. b/n/f Kimberly Kemp, Appellants–Plaintiffs,**

v.

**ESTATE OF Jackie L. CRABTREE, Jr., Appellee–Defendant.**

**No. 55A01–0308–CV–295.**

Court of Appeals of Indiana.

June 2, 2004.

Stephen A. Oliver, Boren Oliver & Coffey, Martinsville, IN, Attorney for Appellants.

Seth M. Lahn, Yarling & Robinson, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellants–Plaintiffs A.C. and J.C., by their next friend, Kimberly Kemp, (collectively, "Appellants") appeal the trial court's denial of their motion to correct error. We reverse and remand with instructions.[1]

### Issues

Appellants raise two issues, which we reorder and restate as:

I. Whether the trial court abused its discretion by dismissing Appellants' claim for punitive damages; and

II. Whether the trial court abused its discretion by denying their motion to correct error because Allstate's subrogation rights should have been reduced by a pro rata share of the costs incurred in pursuing and obtaining a judgment against the tortfeasor, pursuant to Indiana Code Section 34–53–1–2.

### Facts and Procedural History

#### I. Background

The parties agree on the following relevant facts. On March 2, 2001, A.C. and J.C. were passengers in a car driven by their father, Jackie Crabtree, Jr., ("Crabtree"), which was involved in a two-car accident. The accident occurred because Crabtree suddenly turned in front of the driver of the second car. The police officer investigating the scene of the accident noticed a strong odor of an alcoholic beverage on Crabtree's breath, and Crabtree was later found to have a breath alcohol content of .15.

On the date of the accident, the car driven by Crabtree was insured by an automobile liability insurance policy ("Policy") issued by Allstate Insurance Company ("Allstate") to John and Carmel Butler (the "Butlers"). On March 16, 2001, Kemp, who is A.C. and J.C.'s mother, was advised by Allstate that her daughters were each entitled to $5,000.00 of medical payment coverage benefits for all reasonable medical expenses incurred as a result of injuries received in the collision. Subsequently, between March 27, 2001, and December 21, 2001, Allstate made payments to various health-care providers who had provided medical services to A.C. and J.C., pursuant to the medical payments coverage provisions of the Policy. These payments totaled $3,203.05 for A.C. and $3,648.75 for J.C.

#### II. Relevant Policy Provisions

The Policy between the Butlers and Allstate contained Policy Declarations, which named the Butlers as the "named insureds" and provided a limit of $100,000.00 per person or $300,000.00 per occurrence for bodily injury associated with Automobile Liability Insurance, and $5,000.00 per person for Automobile Medical Payments. Appellants' App. at 81. The Policy provided, in pertinent part, that:

*Conformity to State Statutes*

When any policy provision is in conflict with the law of the state in which the policy was issued, the minimum requirements of the law of the state apply.

\* \* \* \* \*

*Subrogation Rights*

1. We heard oral argument, which is available on webcast, on May 11, 2004.

When we [2] pay under Automobile Medical Payments, ... an insured person's rights of recovery from anyone else become ours up to the amount we have paid. An insured person must protect these rights and, at our request, help us to enforce them.

\* \* \* \* \*

*Part 1*
*Automobile Liability Insurance*
*Bodily Injury Liability—Coverage AA*

\* \* \* \* \*

... Allstate will pay damages which an insured person is legally obligated to pay because of:

1. bodily injury sustained by any person, and

2. damage to, or destruction of, property including loss of use.

Under these coverages, your policy protects an insured person from liability for damages arising out of the ... maintenance or use ... of an insured auto.

We will not pay any punitive or exemplary damages, fines or penalties under Bodily Injury Liability or Property Damage Liability coverage.

We will defend an insured person sued as a result of a covered accident involving an insured auto....

\* \* \* \* \*

*Additional Definition for Part 1*
"Insured Person(s)" means:

1. While using your insured auto:
 a. you,
 b. any resident,

c. and any other person using it with your permission.

\* \* \* \* \*

*Part 2*
*Automobile Medical Payments Coverage CC*

If a premium is shown on the Policy Declarations for Automobile Medical Payments, Allstate will pay to or on behalf of an insured person all reasonable expenses actually incurred by the insured person for necessary medical treatment, medical services or medical products actually provided to the insured person by a state licensed health care provider.... Payment will be made only when bodily injury is caused by a motor vehicle accident.

\* \* \* \* \*

*Additional Definitions for Part 2*

1. Insured Person(s) means:
 a. You [3] and any resident relative who sustains bodily injury....
 b. Any other person who sustains bodily injury while in, on, getting into or out of, or getting on or off of:
 i. Your insured auto while being used as a vehicle by you, a resident relative, or any other person with your permission.

\* \* \* \* \*

*Limit Of Liability*

\* \* \* \* \*

There will be no duplication of payments made under the Bodily Injury Liability Insurance, Uninsured Motorists Insur-

---

2. The Policy specifies that the terms Allstate, We, Us, and Our refer to the company shown on the Policy Declarations. Appellants' App. at 91.

3. The Policy defines the terms you or your as the policyholder named on the Policy Declarations and that Policyholder's resident spouse. Appellants' App. at 91.

ance, and Automobile Medical Payments coverage of this [P]olicy. All payments made to or on behalf of any person under this coverage will be considered advance payment to that person. Any damages payable under the Bodily Injury Liability Insurance or Uninsured Motorists coverages of this [P]olicy will be reduced by that amount.

*Id.* at 90, 93–95, 97–99.

### III. Commencement of Present Litigation

On June 3, 2002, Appellants filed an amended complaint against Crabtree's estate ("Estate")[4] seeking compensatory and punitive damages. On December 12, 2002, the Estate moved to dismiss Appellants' claim for punitive damages, which the trial court granted. On May 15, 2003, after a two-day trial, the jury found in favor of Appellants and awarded $11,500.00 to A.C. and $11,500.00 to J.C. On May 21, 2003, the Estate filed a "Motion to Credit Advance Payments Made By Allstate Insurance Company Against the Judgments," which sought to reduce the $11,500.00 judgments by $3,203.05 for A.C.'s medical payments and $3,648.75 for J.C.'s medical payments. On May 29, 2003, the trial court reduced A.C.'s judgment to $8,296.95 and J.C.'s judgment to $7,851.25. The Appellants filed a timely motion to correct error, which the trial court denied. Appellants now appeal the trial court's dismissal of their claim for punitive damages and the trial court's denial of their motion to correct error.

### Discussion and Decision

### I. Dismissal of Claim for Punitive Damages

#### A. Standard of Review

■ In reviewing the grant of a motion to dismiss for failure to state a claim

upon which relief can be granted, we accept as true the facts as alleged in the complaint. *City of Anderson v. Weatherford,* 714 N.E.2d 181, 184 (Ind.Ct.App. 1999), *trans. denied.* We examine the legal sufficiency of the complaint, viewing the pleadings in the light most favorable to the nonmoving party and drawing every reasonable inference in favor of that party. *Am. Dry Cleaning & Laundry v. State,* 725 N.E.2d 96, 98 (Ind.Ct.App.2000). We will affirm the denial of a motion to dismiss unless it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id.* Further, in determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record. *Id.*

#### B. Analysis

■ First, Appellants argue that the trial court erred by granting the Estate's motion to dismiss their claim for punitive damages. Punitive damages may be awarded only "if there is clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing." *Foster v. Evergreen Healthcare, Inc.,* 716 N.E.2d 19, 24 (Ind.Ct.App.1999) (citations omitted), *trans. denied.*

In the present case, Appellants' amended complaint alleged that Crabtree was "wanton, willful, reckless, and in heedless disregard for the safety of [Appellants] and others." Appellants' App. at 17. In addition, the amended complaint alleged

---

4. The record does not disclose how Crabtree died. However, at oral argument, the parties agreed that Crabtree's death did not result from the accident in question.

that Crabtree drove the car with Appellants as passengers while he was intoxicated. These allegations, taken as true, are undoubtedly sufficient to maintain a cause of action for punitive damages against Crabtree, personally. *See, e.g., Robbins v. McCarthy*, 581 N.E.2d 929, 935 (Ind.Ct. App.1991) (holding that a defendant's conviction and sentence in connection with an accident caused by driving while intoxicated did not preclude recovery of punitive damages by an injured passenger in a subsequent civil action), *reh'g denied, trans. denied*. However, the question before us is whether Appellants, via these allegations, may seek punitive damages against the Estate.

■ The issue of whether the recovery of punitive damages is permitted against a deceased tortfeasor's estate is one of first impression in Indiana;[5] however many other jurisdictions have addressed this issue with differing results. *See, e.g., G.J.D. v. Johnson*, 552 Pa. 169, 713 A.2d 1127, 1129 n. 3 (1998) (surveying state statutes and case law). Several states have enacted legislation explicitly precluding the award of punitive damages against a deceased tortfeasor's estate and, in the states that have no statutory bar to recovery, the courts are split as to whether recovery may be allowed. *Id.* at 1129. The majority rule holds that punitive damages may not be recovered from the estate of a deceased tortfeasor. *Id.* at 1129 n. 4; *see also Stewart v. Estate of Cooper*, 102 S.W.3d 913 (Ky.2003); *and Olson–Roti v. Kilcoin*, 653 N.W.2d 254 (S.D.2002). The rationale behind this rule appears to be that the primary purposes supporting a

punitive damage award, i.e., punishing the wrongdoer and deterring others' tortious conduct, are not furthered when the tortfeasor is deceased. *See G.J.D.*, 713 A.2d at 1129; *see also Allen v. Anderson*, 93 Nev. 204, 562 P.2d 487 (1977). In addition, some courts that ascribe to the majority rule fear that, by allowing punitive damages against an estate, the decedent's heirs, i.e., innocent parties, are punished. *See, e.g., Lohr v. Byrd*, 522 So.2d 845, 846 (Fla.1988); *see also State Farm Mut. Auto. Ins. Co. v. Maidment*, 107 N.M. 568, 761 P.2d 446, 449 (Ct.App.1994), *cert. denied*, 107 N.M. 413, 759 P.2d 200 (N.M 1988). These courts reason that if it is the innocent estate and beneficiaries that are punished by the imposition of punitive damages, and not the individual tortfeasor, the general deterrent element supporting a punitive damage award becomes diffused and is speculative at best. *See, e.g., Lohr*, 522 So.2d at 846.

By contrast, a minority of states permits recovery of punitive damages from the estate of a deceased tortfeasor, relying upon policy considerations in addition to those of punishment and deterrence of the tortfeasor. *See, e.g., G.J.D.*, 713 A.2d at 1129 n. 6; *see also Kaopuiki v. Kealoha*, 104 Hawai'i 241, 87 P.3d 910 (Ct.App.2003), *cert. granted*, 103 Hawai'i 61, 79 P.3d 679 (2003); *and Haralson v. Fisher Surveying, Inc.*, 201 Ariz. 1, 31 P.3d 114 (2001). Pennsylvania, for example, has upheld the imposition of exemplary or punitive damages against an estate based upon principles of fairness and general deterrence. *See, e.g., id.* at 1131 ("To allow a tortfea-

---

**5.** Indiana courts have addressed the issue of whether a decedent's estate may recover punitive damages against a tortfeasor. *See, e.g., Durham ex rel. Estate of Wade v. U–Haul Int'l*, 745 N.E.2d 755, 761 (Ind.2001) (holding that punitive damages are not recoverable in an action brought under the wrongful death stat-

ute), *reh'g denied; cf. Foster v. Evergreen Healthcare, Inc.*, 716 N.E.2d 19, 28 (Ind.Ct. App.1999) (holding that the decedent's estate may seek punitive damages under Indiana's Survival Statute, i.e., Indiana Code Section 34–9–3–4), *trans. denied*.

sor's estate to escape payment of punitive damages would be comparable to the injustice of allowing a defendant to transfer his wealth to his prospective heirs and beneficiaries prior to the trial of a case in which punitive damages are sought against him."). Illinois has also permitted a punitive damages award against a decedent's estate. See, e.g., Penberthy v. Price, 281 Ill.App.3d 16, 216 Ill.Dec. 902, 666 N.E.2d 352, 356–57 (1996). In Penberthy, an intoxicated driver crossed the center line and collided with plaintiffs' vehicle. In a suit by plaintiffs against the deceased driver's estate, the Penberthy court permitted a punitive damage award based upon general deterrence and the "strong public policy against mixing alcohol and automobiles." Id. We find the rationale behind the minority rule to be very persuasive.

In the present case, Appellants sought punitive damages against the Estate pursuant to Indiana's Survival Statute, i.e., Indiana Code Section 34–9–3–1, which provides that:

(a) If an individual who is entitled or liable in a cause of action dies, the cause of action survives and may be brought by or against the representative of the deceased party except actions for:

(1) libel;

(2) slander;

(3) malicious prosecution;

(4) false imprisonment;

(5) invasion of privacy; and

(6) personal injuries to the deceased party;

which survive only to the extent provided in this chapter.

(b) An action under this chapter may be brought, or the court, on motion, may allow the action to be continued by or against the legal representatives or successors in interest of the deceased. The action is considered a continued action and accrues to the representatives or successors at the time the action would have accrued to the deceased if the deceased had survived.

This code section is silent on the issue of damages.[6] Specifically, Indiana Code Section 34–9–3–1 does not expressly provide for nor prohibit the recovery of punitive damages. Rather, by its plain and unambiguous language, the statute allows a plaintiff to bring certain causes of action against the representatives of a deceased party's estate, provided that the decedent was liable.

In their amended complaint, Appellants alleged that Crabtree's conduct was wanton, willful, reckless, and in heedless disregard for their safety and the safety of others, when he drove while intoxicated. Because these allegations do not involve libel, slander, malicious prosecution, false imprisonment, invasion of privacy, or personal injuries to the deceased party, Appellants' action for gross negligence or wanton and willful conduct survived Crabtree's death pursuant to Indiana Code Section 34–9–3–1. Further, because compensatory and punitive damages are generally associated with this cause of action, they, too, survived the death of Crabtree. Had the legislature intended otherwise, it would

---

**6.** In Mundell v. Beverly Enter.-Ind., Inc., 778 F.Supp. 459 (S.D.Ind.1991), the district court addressed the issue of whether a decedent's personal representative may recover punitive damages under Indiana Code Section 34–9–3–1 and held that an amendment to the Indiana Survival Statute did not broaden damages received by decedent's personal representative to include punitive damages. Cf. Foster, 716 N.E.2d at 26 (allowing the personal representative of an estate to seek punitive damages under Indiana Code Section 34–9–3–4). However, we are not bound by federal court decisions in their interpretations of Indiana law. Miller v. Dilts, 463 N.E.2d 257, 263 (Ind.1984).

have expressly provided as such by either excluding Appellants' cause of action from those that survive a decedent's death or limiting the category of awardable damages. However, our legislature did neither.

Moreover, in adopting the minority rationale, which permits the recovery of punitive damages against a decedent's estate, we highlight the various policies underlying an award of punitive damages. In Indiana, "punitive damages, sometimes designated 'private fines' or 'exemplary damages,' have historically been viewed as designed to deter and punish wrongful activity." *Cheatham v. Pohle*, 789 N.E.2d 467, 471 (Ind.2003). Indeed, over one hundred years ago, our supreme court observed that: "[e]xemplary or punitive damages ... are damages allowed as a punishment, or by way of example, to deter others from the like offences, for torts committed with accompanying fraud, malice, or oppression." *Durham ex rel. Estate of Wade v. U–Haul Intern.*, 745 N.E.2d 755, 762 (Ind.2001) (quoting *State ex rel. Scobey v. Stevens*, 103 Ind. 55, 59, 2 N.E. 214, 216 (1885)), *reh'g denied*.

 In the present case, allowing Appellants to maintain a cause of action against the Estate for Crabtree's wanton, willful, and reckless behavior of driving while intoxicated will advance our state's public policy interests in deterrence and preventing driving while intoxicated. Clearly, if a tortfeasor is deceased, both the ability to punish and the need to deter like conduct on his or her behalf in the future are lost. There is little doubt, however, that allowing punitive damages to survive against a deceased tortfeasors estate would serve as a deterrent to others. For example, observing a decedents estate exhaust some or all of its assets to a punitive damage award, arising out of decedents conduct of driving while intoxicated, will undoubtedly deter those who might have engaged in similar reprehensible conduct but for the fact that they wish to leave an inheritance to their heirs or devisees.[7]

In addition, Indiana has long recognized the toll that drunk driving has taken on the general public and the states interest in preventing accidents caused by drivers who are intoxicated. *Smith v. Cincinnati Ins. Co.*, 790 N.E.2d 460, 461 (Ind.2003). Allowing an injured party to seek punitive damages against the estate of an individual who engaged in driving while intoxicated comports with this strong public policy concern.

Further, the bright-line test that we establish today regarding an individuals right to seek punitive damages against a deceased tortfeasors estate will avoid absurd and untenable results in the future. There is no logical reason, for example, why Indiana courts should allow a punitive damage award against a defendant who survives a judgment, despite his or her physical or mental condition, but deny it

---

**7.** We reject the argument that allowing an award of punitive damages against a decedent's estate merely punishes the innocent estate and its beneficiaries. Indiana Code Section 29–1–7–23 provides that:

When a person dies, his real and personal property, passes to persons to whom it is devised by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as his heirs; but it shall be subject to the possession of the personal representative and to the election of the surviving spouse and shall be chargeable with ... the payment of other claims.... Thus, expectant heirs have an interest in the assets of the estate, but such interest is future and contingent upon the satisfaction of other obligations. *Inlow v. Henderson, Daily, Withrow & DeVoe*, 787 N.E.2d 385, 395 (Ind.Ct. App.2003), *trans. denied*. Such obligations include the imposition of punitive damages resulting from decedent's tortious conduct.

where death occurs earlier. As an illustration,[8] imagine that two individuals commit equally culpable and reprehensible acts. One is comatose and has no reasonable or likely chance of recovery. The other is deceased. As a result of their circumstances, we, as a society, are unable to punish either wrongdoer. Accordingly, it would be incongruous to expose the unconscious tortfeasors assets to punitive damages, while, at the same time, immunizing the assets of the decedents estate. Moreover, if our judicial system were to preclude a plaintiff from seeking punitive damages against a decedents estate, what would be the result if the tortfeasor survived the accident but died at the conclusion of trial, or better still, immediately before the jury returned with a verdict. We prefer to avoid these inconsistent and unworkable circumstances by allowing an individual to seek punitive damages against a decedents estate. If there is to be a difference in legal treatment, it should be clearly and unequivocally established by the legislature. However, with respect to Indiana Code Section 34-9-3-1, we will not interpret the legislatures silence on the issue of punitive damages as approval of such disparate results. *See, e.g., Estate of Farrell v. Gordon,* 770 A.2d 517, 521–22 (Del.2001) (interpreting the Delaware Survival Statute—which provides, in relevant part, that: "All causes of action, except actions for defamation, malicious prosecution, or upon penal statutes, shall survive to and against the executors or administrators of the person to, or against whom, the cause of action accrued. Accordingly, all actions so surviving, may be instituted or prosecuted by or against the executors or administrators of the person to or against whom the cause of action accrued"—and holding that, in the absence of a specific statutory restriction, there is no basis to bar recovery for punitive damages against a deceased tortfeasors estate).

■ Because we hold that claims for punitive damages are allowed against a deceased tortfeasor's estate, the trial court erred by dismissing Appellants claim for punitive damages. As such, we reverse the judgment below and remand to the trial court with instructions to reinstate Appellants claim for punitive damages.[9]

## II. Motion to Correct Error

### A. Standard of Review

■ Appellants next argue that the trial court erroneously denied their motion to correct error. Our resolution of the punitive damage issue obviates the need to address the appropriateness of the trial court's denial of Appellants' motion to correct error. However, because this issue may reappear, we will address it here. A trial court has wide discretion to correct errors, and we will reverse only for an

---

8. *See Haralson v. Fisher Surveying, Inc.,* 201 Ariz. 1, 31 P.3d 114, 118 (2001).

9. We cautiously note, however, that the Rules of Professional Conduct require that the lawyer serve the best interests of his or her client. *See generally,* Ind. Professional Conduct Rules 1.4(b), 1.7(b), and 2.1. Under the circumstances presented in this case, pursuing a claim for punitive damages may not be in Appellants' best interests. Indeed, assuming that A.C. and J.C. are heirs or devisees of the Estate, an award of punitive damages against the Estate would effectively punish them because such an award would reduce the amount of any inheritance, i.e., the Estate, by the full amount of the award. Additionally, Indiana Code Section 34–51–3–6 limits the Appellants to twenty-five percent of any punitive damage award, less attorney fees. Thus, assuming A.C. and J.C. are heirs or devisees of the Estate, an award of punitive damages would reduce the size of the Estate and, thereby, reduce their inheritance. Simply put, just because an action can be pursued does not answer the question of whether the action should be pursued.

abuse of that discretion. *Dughaish ex rel. Dughaish v. Cobb,* 729 N.E.2d 159, 167 (Ind.Ct.App.2000), *reh'g denied, trans. denied.* An abuse of discretion occurs when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences that may be drawn therefrom. *Id.*

## B. Analysis

■ Appellants contend that the trial court abused its discretion by denying their motion to correct error, which had alleged that the trial court erroneously reduced their judgments by the total amount of the medical payments paid by Allstate on behalf of A.C. and J.C. without taking into account the costs associated with pursuing litigation against the Estate. Initially, we note that Allstate is not a party to this appeal and has not sought permission to intervene in the present action. We also recognize that the Estate did not pay the medical payments at issue and, therefore, is not entitled to any set-off or reduction in the judgments. Accordingly, the trial court erroneously reduced Appellants' judgments by the total amount of the medical payments paid by Allstate on behalf of A.C. and J.C. and, therefore, abused its discretion by denying Appellant's motion to correct error.

■ However, the specific issue before us is whether the trial court properly reduced the total amount of the medical payments paid by Allstate, without considering the costs incurred by Appellants in pursuing litigation against the Estate. The parties appear to agree that, to prevent A.C. and J.C. from receiving a double recovery, Allstate is entitled to be subrogated for the medical payments it paid on behalf of A.C. and J.C. However, it is the net amount to be reimbursed under the subrogation claim that is in dispute.

■ In particular, Appellants contend that the medical payments paid by Allstate—i.e., $3,203.05 for A.C. and $3,648.75 for J.C.—did not constitute advance payment, pursuant to Indiana Code Section 34–6–2–3, but rather, were "first party insurance benefits to which [A.C. and J.C.] were entitled under the Policy." Appellants' Br. at 5. As such, their argument continues, the trial court erred by reducing their $11,500.00 judgments by the total amount of the prepaid medical payments without considering the costs associated with initiating and pursuing litigation against the Estate. By contrast, the Estate contends that the medical payments represented "advance payment" as evidenced by the Policy's plain and unambiguous terms and, thus, the trial court properly deducted the total amount of the medical payments from Appellants' judgments.

The Policy provides, in pertinent part, that:

*Limit of Liability*

\* \* \* \* \*

There will be no duplication of payments made under … Automobile Medical Payments coverage of this [P]olicy. *All payments made to or on behalf of any person under this coverage will be considered advance payment to that person.*

Appellants' App. at 99 (emphasis added). By the Policy's express terms, the medical payments at issue constituted advance payment to A.C. and J.C. However, mere interpretation of the contractual terms does not conclude our analysis.

■ An insurance contract may not contravene a statute. In particular, an insurer may limit its liability for a particular act or omission as long as the exclusion is plainly expressed in the insurance contract and does not contravene statutory authority or public policy. *Asbury v. Ind.*

*Union Mut. Ins. Co.,* 441 N.E.2d 232, 236 (Ind.Ct.App.1982). The Policy in dispute recognizes this rule of law and provides as follows:

*Conformity to State Statutes*

When any policy provision is in conflict with the law of the state in which the policy was issued, the minimum requirements of the law of the state apply.

Appellants' App. at 90.

Indiana Code Sections 34–44–2–1 to 34–44–2–3 apply to an action brought to recover damages for personal injuries, wrongful death, or property damage, provided that the plaintiff brings suit against only one defendant. *See* Ind.Code § 34–44–2–1. Indiana Code Section 34–44–2–3 provides that:

If it is determined that the plaintiff is entitled to recover in an action described in section 1 of this chapter:

(1) the defendant may introduce evidence of any advance payment made; and

(2) the court shall reduce the award to the plaintiff to the extent that the award includes an amount paid by the advance payment.

Indiana Code Section 34–6–2–3 defines advance payment, for purposes of Indiana Code Section 34–44–2, as:

a payment made:

(1) by:

(A) the defendant in an action to recover damages for personal injuries, wrongful death, or property damage; or

(B) the defendant's insurance company; and

(2) to or for the plaintiff or any other person.

The Estate maintains that Indiana Code Section 34–44–2–3 controls this action and, as such, Allstate is entitled to recover the medical payments paid by Crabtree's insurer, i.e., Allstate, to A.C. and J.C. Appellants, however, contend that this action is governed by Indiana Code Section 34–53–1, which "applies to an insurer claiming subrogation or reimbursement rights to the proceeds of a settlement or judgment resulting from a legal proceeding commenced by an insured against a third party legally responsible for personal injury for which payment is made by the insurer." Ind.Code § 34–53–1–1. Indiana Code Section 34–53–1–2 provides:

An insurer claiming subrogation or reimbursement rights under this chapter shall pay, out of the amount received from the insured, the insurer's pro rata share of the reasonable and necessary costs and expenses of asserting the third party claim. These reasonable and necessary costs and expenses include and are not limited to the following:

(1) The cost of depositions.

(2) Witness fees.

(3) Attorney's fees to the lesser of:

(A) the amount contracted by the insured for the insured's portion of the claim; or

(B) thirty-three and one-third percent (33 1/3%) of the amount of the settlement.

The Estate counters that Indiana Code Section 34–53–1–2 does not apply to the present action because the Estate was entitled to a set-off under the Advance Payment Section and the terms of the Policy. We find this argument unpersuasive.

Here, it is undisputed that Crabtree was a permissive driver of the car involved in the accident. The Butlers insured this car with Allstate. Consequently, Crabtree was an insured under the terms of the Automobile Liability Insurance provisions of the Allstate Insurance Policy as a permissive user of the automobile. In addition, under the Automobile Medical Pay-

ment Coverage provisions of the Policy, A.C. and J.C. were also "insured persons" because they sustained bodily injuries while passengers in the insured vehicle. However, the Medical Payment Coverage provisions constitute an additional type of insurance provided for in the Policy that is independent of A.C.'s and J.C.'s right to recover against Crabtree under the Liability provisions of the Policy. As such, the medical payments paid by Allstate, on behalf of its insureds, A.C. and J.C., did not constitute advance payment pursuant to Indiana Code Section 34–6–2–3 because they were not made by Crabtree or *his* insurer, in an action to recover damages. As such, the medical payments made to A.C. and J.C. do not constitute an "advance" as that term is defined in Indiana Code Section 34–44–2–3. Therefore, pursuant to Indiana Code Section 34–53–1–2, Allstate is entitled to be reimbursed for the medical payments made to A.C. and J.C., less its proportionate share of the litigation expenses.[10]

For the foregoing reasons, we reverse the trial court's dismissal of Appellants' claim for punitive damages and the trial court's order denying Appellants' motion to correct error. We remand to the trial court for proceedings consistent with this opinion.

Reversed and remanded with instructions.

RILEY, J., and DARDEN, J., concur.

---

**10.** If a net amount to be reimbursed cannot be agreed upon, Allstate has recourse through the pursuit of its subrogation rights.