ATTORNEY FOR APPELLANTS
Stephen A. Oliver
Martinsville, Indiana

ATTORNEY FOR APPELLEE
Seth M. Lahn
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 55S01-0409-CV-431

ALICIA CRABTREE AND JACELYN
CRABTREE, BY THEIR NEXT FRIEND
KIMBERLY KEMP,

*Appellants (Plaintiffs below),*

v.

ESTATE OF JACKIE L. CRABTREE, JR.,

*Appellee (Defendant below).*

Appeal from the Morgan Circuit Court, No. 55C01-0204-CT-00199
The Honorable Matthew G. Hanson, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 55A01-0308-CV-295

**November 9, 2005**

**Boehm, Justice.**

The plaintiffs in this case were injured in an accident as passengers in a car driven by their father while he was intoxicated. After their father died of unrelated causes, the children brought this suit against his estate. We hold that Indiana law does not permit recovery of punitive damages from a decedent's estate. We also hold that under the terms of this policy, the final judgment should exclude damages included in the verdict that were already satisfied by payments under the defendant's medical expenses coverage.

**Facts and Procedural History**

Alicia and Jacelyn Crabtree were passengers when the car driven by their father, Jackie Crabtree, Jr., ("Crabtree") was involved in an accident. Crabtree's breath test indicated .15% blood alcohol content and the investigating officer's report concluded that Crabtree was at fault for failure to yield to the oncoming vehicle. The car was insured by Allstate Insurance Company,[1] and Allstate made payments under the Medical Payments coverage in amounts of $3,203.05 for Alicia and $3,648.75 for Jacelyn.[2]

Approximately one year later, Crabtree died of causes unrelated to the accident. The children, by their mother, Kimberly Kemp, sued Crabtree's estate for compensatory and punitive damages. The trial court granted the Estate's motion to dismiss the punitive damages claim, and the claim for compensatory damages was tried to a jury, resulting in an award of $11,500.00 to each child. On the Estate's motion, the trial court reduced the judgments by the amounts that Allstate had paid to the children's medical service providers under the Medical Payments coverage of the policy insuring the car that Crabtree was driving.

The plaintiffs appealed, challenging the trial court's dismissal of their claim for punitive damages and also the reduction of their awards for medical payments. The Court of Appeals held that the punitive damages claim survived Crabtree's death, and that the medical payments were not "advance payments" under the statute permitting reduction of an award to the extent of advance payments by an insurer. Rather, Allstate was entitled to be reimbursed as a subrogee for the medical payments made to Alicia and Jacelyn, which required that it bear a proportionate share of the children's litigation expenses in collecting from the Estate. Crabtree v. Crabtree,

[1] The policy was issued to third parties, but Crabtree was apparently using the car with the owners' permission. Appellant's Appendix at 80-82. Our Rules Committee has called to our attention an order of the Court of Appeals in Theobald v. Hartford Cas. Ins. Co., 762 N.E.2d 785 (Ind. Ct. App. 2002), trans. denied, that the Committee reports has been taken to hold that an appellant has no obligation to serve the appendix required by Appellate Rule 50 on other parties to the appeal. That is not correct. Pursuant to Rule 49(A), the appendix is required to be filed by the appellant and supplements may be filed by any party. Appellate Rule 24(A) provides: "Unless otherwise provided by these Rules, all other documents tendered to the Clerk for filing must be served upon all parties who have filed an Appellant's Case Summary or an appearance under Rules 15 or 16, any persons seeking party status, and any persons required by statute to be served." The exception providing that the appendix need not be served on the attorney general applies only to criminal appeals. To the extent Theobald suggests that service of the appellant's appendix or any supplement is not required in civil cases, it is disapproved.

[2] The sum of the amounts Allstate paid to medical providers on behalf of Jacelyn may actually total $3,852.75. According to the record, two payments were made to Radiology Associates of Indianapolis. The second payment, which was made on December 21, 2001 in the amount of $204.00, may have been omitted from previous calculations.

809 N.E.2d 433, 438, 442 (Ind. Ct. App. 2004). We granted transfer. Crabtree v. Crabtree, 822 N.E.2d 977 (Ind. 2004).

## I. Punitive Damages

The plaintiffs sought to recover punitive damages from Crabtree's estate. We take the allegations of the complaint as true for purposes of this appeal and review de novo the trial court's order dismissing the punitive damages claim because it involves a pure question of law. Niksich v. Cotton, 810 N.E.2d 1003, 1004 (Ind. 2004); Randolph v. Methodist Hosp., Inc., 793 N.E.2d 231, 234 (Ind. Ct. App. 2003), trans. denied. We will affirm the trial court's grant of a motion to dismiss for failure to state a claim only if the complaint states a set of facts which, even if proved, do not support the relief requested in the complaint. City of New Haven v. Reichhart, 748 N.E.2d 374, 377-78 (Ind. 2001).

The plaintiffs cite Indiana's Survival Statute, Indiana Code chapter 34-9-3 (2004). Section 1 of the Survival Statute was designed to overrule the common law rule that a claim evaporated with the death of the defendant. It provides that if "an individual who is . . . liable in a cause of action dies, the cause of action survives . . ." I.C. § 34-9-3-1(a). Based on this statutory language, the plaintiffs contend that their claim for punitive damages survives Crabtree's death. This section does not address the issue of punitive damages one way or the other. It contains no explicit mention of punitive damages. This itself can be viewed as an implicit rejection of punitive damages, which ordinarily are recoverable under a statutory cause of action only by explicit statutory authorization. Ind. Civil Rights Comm'n v. Alder, 714 N.E.2d 632, 638 (Ind. 1999). More importantly, by its terms this statute preserves a "cause of action." There is no "cause of action" for punitive damages. Punitive damages are a remedy, not a separate cause of action. Allstate Ins. Co. v. Axsom, 696 N.E.2d 482, 485 (Ind. Ct. App. 1998), trans. denied. Successful pursuit of a cause of action for compensatory damages is a prerequisite to an award of punitive damages. See Erie Ins. Co. v. Hickman, 622 N.E.2d 515, 523 (Ind. 1993); Sullivan v. Am. Cas. Co. of Reading, Pa., 605 N.E.2d 134, 140 (Ind. 1992). There is no freestanding claim for punitive damages apart from the underlying cause of action.

Because the Survival Statute is silent on this point, we must resort to interpretation and precedent. As the Court of Appeals noted, this is a question of first impression in Indiana. There

3

is a split of authority in other jurisdictions as to whether punitive damages are recoverable from a deceased tortfeasor's estate. The majority view denies punitive damages.[3] The majority view reasons that punitive damages are intended to punish the wrongdoer. The death of the tortfeasor eliminates the court's ability to accomplish that goal so punitive damages are not recoverable against the estate of a deceased tortfeasor.[4]

A minority of jurisdictions permit recovery of punitive damages after the tortfeasor's death. Although the decedent can be neither punished nor deterred, these courts have found punitive damages sufficiently justified by deterrence of others from engaging in similar conduct.[5] These courts take the view that potential tortfeasors will be deterred by the knowledge that their estates may be liable for punitive damages.[6] Some also note that punitive damages provide additional compensation to victims for remote losses, inconvenience, and attorney's fees.[7] At least

---

[3] See, e.g., Doe v. Colligan, 753 P.2d 144, 146 (Alaska 1988); Evans v. Gibson, 31 P.2d 389, 395 (Cal. 1934); Jonathan Woodner Co. v. Breeden, 665 A.2d 929, 939 (D.C. 1995); Lohr v. Byrd, 522 So. 2d 845, 846-47 (Fla. 1988); Sightler v. Transus, Inc., 430 S.E.2d 81, 81 (Ga. Ct. App. 1993), cert. denied, (citing Morris v. Duncan, 54 S.E. 1045, 1046 (Ga. 1906)); Wolder v. Rahm, 249 N.W.2d 630, 632 (Iowa 1977); Fehrenbacher v. Quackenbush, 759 F. Supp. 1516, 1521-22 (D. Kan. 1991) (predicting Kansas law); Stewart v. Estate of Cooper, 102 S.W.3d 913, 916 (Ky. 2003); Johnson v. Levy, 47 So. 422, 424 (La. 1908); Thompson v. Estate of Petroff, 319 N.W.2d 400, 408 (Minn. 1982); Allen v. Anderson, 562 P.2d 487, 488-89 (Nev. 1977); Jaramillo v. Providence Wash. Ins. Co., 871 P.2d 1343 (N.M. 1994); Thorpe v. Wilson, 293 S.E.2d 675, 680 (N.C. Ct. App. 1982); McAdams v. Blue, 164 S.E.2d 490, 494 (N.C. Ct. App. 1968) (citing Rippey v. Miller, 33 N.C. 247, 250 (1850)); Mongold v. Estate of Gilbert, 758 N.E.2d 1245, 1249 (Ohio Ct. of Com. Pl. 2000); Morriss v. Barton, 190 P.2d 451, 459-60 (Okla. 1947); Olson-Roti v. Kilcoin, 653 N.W.2d 254, 260 (S.D. 2002); Hayes v. Gill, 390 S.W.2d 213, 217 (Tenn. 1965); Dalton v. Johnson, 129 S.E.2d 647, 650-51 (Va. 1963); Parker v. Artery, 889 P.2d 520, 525 (Wyo. 1995); 30 A.L.R. 4th 707 §§ 3, 4 (1984 & Supp. 2005) (listing courts that have refused to award punitive damages against a deceased tortfeasor's estate).

[4] See Evans, 31 P.2d at 395; Lohr, 522 So. 2d at 846; Thompson, 319 N.W.2d at 408; Marcante v. Hein, 67 P.2d 196, 202-03 (Wyo. 1937); Restatement (Second) of Torts § 908 cmt. a (1979); 1 J. D. Lee & Barry A. Lindahl, Modern Tort Law § 21.35 (Rev. Ed. 1994); 1 James D. Ghiardi & John J. Kircher, Punitive Damages Law & Practice § 9.10 (1987 & Cum. Supp. 1993); 25 C.J.S. Damages § 125(3) (1966).

[5] See, e.g., Shirley v. Shirley, 73 So. 2d 77, 85 (Ala. 1954); Haralson v. Fisher Surveying, Inc., 31 P.3d 114, 117 (Ariz. 2001); Estate of Farrell v. Gordon, 770 A.2d 517, 521 (Del. 2001); Penberthy v. Price, 666 N.E.2d 352, 356-57 (Ill. App. Ct. 1996); Tillett v. Lippert, 909 P.2d 1158, 1162 (Mont. 1996) (relying on case law and a statute which provided that "a judge or jury may award . . . punitive damages for the sake of example" to sustain a punitive award against an estate); G.J.D. v. Johnson, 713 A.2d 1127, 1129 (Pa. 1998); Hofer v. Lavender, 679 S.W.2d 470, 472-75 (Tex. 1984); Perry v. Melton, 299 S.E.2d 8, 12 (W. Va. 1982).

[6] See G.J.D. v. Johnson, 669 A.2d 378, 383 (Pa. Super. Ct. 1995).

[7] Hofer, 679 S.W.2d at 475; Perry, 299 S.E.2d at 12.

one court found it inconsistent to allow a punitive award to be collected from an estate if the tort-feasor was alive when the complaint was filed, but not if the complaint was filed after death.[8]

We believe the majority view is persuasive and hold that Indiana law does not permit recovery of punitive damages from the estate of a deceased tortfeasor. The central purpose of punitive damages is to punish the wrongdoer and to deter him from future misconduct, not to reward the plaintiff and not to compensate the plaintiff. "[T]he plaintiff has no right or entitlement to an award of punitive damages in any amount. Unlike a claim for compensatory damages, the trier of fact is not required to award punitive damages even if the facts that might justify an award are found." Cheatham v. Pohle, 789 N.E.2d 467, 472 (Ind. 2003); see also Stroud v. Lints, 790 N.E.2d 440, 445 (Ind. 2003) ("Neither the plaintiff nor the plaintiff's counsel has a right to an award of punitive damages in addition to compensatory damages.").

We recognize that punitive damages may serve a dual purpose of punishment of the tortfeasor and deterrence to others. Durham v. U-Haul Intern'l, 745 N.E.2d 755, 762 (Ind. 2001) (citing State ex rel. Scobey v. Stevens, 103 Ind. 55, 59, 2 N.E.2d 214, 216 (1885)). We think, however, there is little, if any, additional deterrence supplied by the prospect that one's estate may be liable for punitive damages if one does not survive. Most tortfeasors in the case of an accident such as this presumably do not contemplate their own demise. If they consider punitive damages at all, they will deem themselves exposed to that possibility. To the extent the tortfeasor thinks at all about the consequences of his tort after he dies, he will recognize that he and his estate will have the obligation to provide full compensation to any victim. If we ever encounter a case where a tortfeasor seems to have considered his own death as an escape from punitive damages incident to some intentional tort, we can address that issue at that time. For now, we are content to hold that the purposes of punitive damages are not served by recovering them from a decedent.

Moreover, as already noted, the plaintiffs have a right to recover the full amount of their damages from the decedent's estate, and no plaintiff is entitled to a punitive damages recovery from any defendant. The effect of a punitive damages award against an estate is that the pun-

---

[8] See, Schwab v. Bates, 12 Pa. D. & C.4th 162, 165 (Ct. Com. Pl. Pa. 1991) ("the imposition of punitive damages against the estate of a tort-feasor does not actually punish the heirs of the decedent much more than they would be punished if the tort-feasor was still alive").

ishment will ultimately be borne by the heirs who are presumably wholly innocent of any wrongdoing. We think affirmative injustice thus would be done by allowing the deceased's innocent heirs to be punished for the wrongdoing of the decedent.

Concern for the heirs of the decedent is especially significant here, where the award, less attorney's fees, would be to the decedent's children. Because punitive damages are generally excluded from insurance coverage, any award would presumably come from the pockets of Crabtree's heirs. Crabtree's will, if there is one, is not in the record. If his heirs are his children, the net effect of any recovery by them would be to take funds from them to pay themselves, less attorney's fees. Moreover, pursuant to statute only twenty-five percent of a punitive damages award would go to the children as plaintiffs and seventy-five percent would go to the State. See I.C. § 34-51-3-6. The apparently successful plaintiffs would be net losers to the tune of at least three-fourths of any punitive damage award, and the only winners would be their attorney and the State. It is not easy to see why such a claim should ever be asserted on behalf of persons who are presumably the beneficiaries of the Estate.

## II. Medical Payments as "Advance Payments"

The plaintiffs contend that the trial court wrongly granted the Estate credit against the judgments for Allstate's medical payment benefits rather than requiring Allstate to seek subrogation rights, which would give the plaintiffs the benefit of the cost allocation provisions of the insurer subrogation statute. They calculate the difference to be $2,283.93.

Resolution of this issue turns on the interplay between the provision of the policy and two statutory provisions. The "Advance Payment" statute, Indiana Code section 34-44-2-3, provides:

> If it is determined that the plaintiff is entitled to recover in an action described in section 1 of this chapter:
> (1) the defendant may introduce evidence of any advance payment made; and
> (2) the court shall reduce the award to the plaintiff to the extent that the award includes an amount paid by the advance payment.

"Advance payments" are defined to include a payment made to the plaintiff by the defendant or the defendant's insurance company. I.C. § 34-6-2-3. In the typical case the injured plaintiff is in one vehicle and the tortfeasor is in another. The medical payments coverage is supplied by the

6

insurer of the plaintiff's car and the relevant liability coverage is insured by the tortfeasor's insurer. In this situation, an "advance payment" is one advanced by the tortfeasor's insurer as, in effect, an interim payment or down payment of potential damages for which the tortfeasor may be liable. The purpose of the Advance Payment statute is to prevent double recovery if an advance payment has been made. See Monroe v. Strecker, 171 Ind. App. 100, 103, 355 N.E.2d 418, 420 (1976). The statute also has the effect of reducing the judgment against the defendant by the amount of the advance payment. See I.C. § 34-44-2-3. This eliminates exposure of the defendant against whom the judgment is entered (as opposed to his insurer) to the amount already paid by the insurer.

The Subrogation Statute, Indiana Code section 34-53-1-2, provides that:

An insurer claiming subrogation or reimbursement rights under this chapter shall pay, out of the amount received from the insured, the insurer's pro rata share of the reasonable and necessary costs and expenses of asserting the third party claim. These reasonable and necessary costs and expenses include and are not limited to the following:
(1) The cost of depositions.
(2) Witness fees.
(3) Attorney's fees to the lesser of:
    (A)  the amount contracted by the insured for the insured's portion of the claim; or
    (B)  thirty-three and one-third percent (33 1/3%) of the amount of the settlement.

This statute also is designed to address the normal situation where the plaintiff's insurer has medical payments coverage and the defendant's insurer has liability coverage. When the plaintiff recovers a judgment for both medical expenses and other damages, the plaintiff's insurer, who has already paid for medical expenses, is entitled to recover that amount as a subrogee, but also should bear its share of the cost of recovering those expenses from the defendant. I.C. § 34-53-1-2.

The insurance policy on the car Crabtree was driving includes medical payments coverage for passengers injured without regard to fault. It also includes liability coverage for Crabtree (as a person operating with the owners' permission) against liability to third parties. The relevant provision in the insurance policy provides:

> Limit of Liability
>
>            \* \* \* \* \*
>
> There will be no duplication of payments made under the . . . Automobile Medical Payments coverage of this policy. All payments made to or on behalf of any person under this coverage will be considered as advance payments to that person. Any damages payable under the Bodily Injury Liability Insurance or Uninsured Motorists coverages of this policy will be reduced by that amount.

The Court of Appeals concluded "Allstate is not a party to this appeal and has not sought permission to intervene in the present action. . . . [and] the Estate did not pay the medical payments at issue." A.C. v. Estate of Crabtree, 809 N.E.2d at 442. Therefore, the Court of Appeals reasoned the Estate cannot claim an offset by reason of the contractual relationship between the plaintiffs and Allstate. The Court of Appeals also concluded that the contract provision conflicted with the Subrogation Statute, and therefore was ineffective.

The contract provides that medical payments "shall be considered" to be an advance payment. The Estate contends that under this policy the medical payments made to the plaintiffs were advance payments made on Crabtree's behalf and therefore a credit against the judgment was appropriate pursuant to the Advance Payment statute. Specifically, if the payment is treated as an "advance payment" then Indiana Code section 34-44-2-3(2) would require the court to "reduce the award to the plaintiff to the extent that the award includes an amount paid by the advance payment." Plaintiffs respond that the payments of their medical expenses were "first party insurance benefits," to which they were entitled, not payments made by a defendant as the defendant's insurer. The plaintiffs reason that the Automobile Medical Payments coverage states that an "'insured person(s)' means: . . . any other person who sustains bodily injury while in . . . your insured auto while being used as a vehicle by you . . . or any other person with your permission." Because Crabtree was driving with the permission of the owner, Alicia and Jacelyn claim they were "insured persons" under this Automobile Medical Payments coverage. They are correct that they were "insured persons," but this does not make them parties to the insurance contract. Rather, the medical payments were paid because of a contract between Allstate and the owners. There is a debate whether injured passengers, such as the plaintiffs in this case, are third-party beneficiaries or otherwise "entitled under a policy" to contractual benefits from the defendant's insurer. See Donald v. Liberty Mut. Ins. Co., 18 F.3d 474, 482 (7th Cir. 1994); Cain

8

v. Griffin, 826 N.E.2d 41, 44 n.1 (Ind. Ct. App. 2005), trans. granted. Regardless of the resolution of this issue, it is clear that a person injured in a car owned and insured by someone else is not a party to the owner's policy. And even if they were parties or third-party beneficiaries to the contract, the terms of the contract would limit any claim.

The policy provides that any amounts paid to or for a person under the medical payments coverage operate to reduce the limits of damages payable to that person under the liability coverage and are to be treated as advance payments. These payments are "to be considered" as advancements against any future liability for the plaintiffs' injuries that might be imposed upon the defendant or the defendant's liability insurance company. In this case medical expenses were plainly paid by the insurance policy covering the car that Crabtree was driving. The statute defining advance payments does not require that payment be made under any contractual obligation at all. The statute provides simply that payment by the defendant or his insurance company will be treated as advance payments thus reducing any judgment to the extent that the award includes an amount paid by the advance payment. We see no conflict between the policy provision and this statute.

The plaintiffs also contend that the Estate cannot claim an offset by reason of the Subrogation Statute. Stated differently, the plaintiffs contend that only Allstate, as subrogee, can claim a right to the portion of the judgment that we assume includes reimbursement for medical expenses. Plaintiffs concede that Allstate's liability coverage will pay the judgment against Crabtree. Thus, the plaintiffs' contention boils down to a claim that Allstate must assert its subrogation rights under Indiana Code section 34-53-1-2 against itself as liability insurer. The Court of Appeals agreed, concluding that the contract could not override the statute. We do not agree that the Subrogation Statute applies here. Exercise of subrogation rights would trigger the obligation of Allstate, as subrogee, to pay a proportionate share of collecting the amount from itself that it had paid voluntarily. We do not believe the legislature intended the Subrogation Statute to compel an insurer to pay attorney's fees to recover the amount of its medical payments from itself. Rather, the Advance Payments statute applies in this case and resolves this problem. The Advance Payment statute reduces the amount of the jury award, and therefore takes the Subrogation Statute out of play. Once the judgment is reduced by the amount of the medical payments, there

is no longer any claim as subrogee, and no conflict between the policy and the Subrogation Statute.

In sum, we think that the terms of the policy control here. The "Limit of Liability" provision quoted above stated that any medical payments "will be considered as advance payments" and damages under the liability coverage of the Allstate policy "will be reduced by that amount." We do not agree that this policy provision conflicts with any statute. As explained above, if the contract provision is honored and the medical payments are advance payments, the judgment is reduced by that amount, and there is no right to recover it a second time. There is therefore no subrogation right to recover that amount and the Subrogation Statute is not in play. The contract provision, in concert with the Advance Payments statute, merely provides for elimination of duplication to the extent medical payments duplicate amounts payable under the liability coverage. Under a policy permitting the insurer to offset payments under medical coverage against payments under liability coverage, the insurer has the burden of establishing that a liability judgment actually included the advanced medical expenses. No offset is allowed where it does not sustain this burden. See 12 Couch on Insurance (Third): Automobile Liability Insurance § 170:22 (West 1998). It is not clear on this record whether the jury intended a portion of its verdict to include the medical expenses that were previously paid under Allstate's medical payments coverage. The Estate's post-verdict motion and supporting documents established that medical payments coverage payments had been advanced on behalf of the plaintiffs and the amounts thereof, but make no reference to whether these amounts were included in the evidence before the jury. But by ordering the reduction, the trial court implicitly so found.

**Conclusion**

The trial court's dismissal of the punitive damages claim and also the trial court's grant of the Estate's motion to reduce the compensatory judgments by amounts advanced by Allstate on behalf of the Estate for the plaintiffs' medical expenses under the terms of the insurance policy are affirmed.

Shepard, C.J., and Rucker, J., concur.
Dickson, J., dissents from Part I and concurs in Part II with separate opinion.
Sullivan, J., dissents from Part I with separate opinion and concurs in Part II.

10

**Dickson, Justice, concurring in part and dissenting in part.**

I dissent in part because, on the issue of punitive damages, I agree with Justice Sullivan's separate opinion.

I concur, however, with the majority's holding that the terms of this insurance contract may operate to reduce the amount payable by the Estate for bodily injury liability damages by amounts paid by the Estate's automobile insurance company to the plaintiffs under the medical payments coverage. I write separately on this issue to emphasize that the Advance Payment statute does not independently apply to payments made under the medical payments coverage of an automobile insurance policy.

It is important to realize that the Court's holding derives from the language of the insurance policy contract between the decedent and his automobile insurance company, and such result would not otherwise be required by the Indiana "Advance Payment" statute, Section 3 of which provides:

> If it is determined that the plaintiff is entitled to recover in an action described in section 1 of this chapter [limiting the chapter to actions to recover damages for personal injuries, wrongful death, or property damage, and involving only one defendant]:
>> (1) the defendant may introduce evidence of any advance payment made;[9] and
>> (2) the court shall reduce the award to the plaintiff *to the extent that the award includes an amount paid by the advance payment*.

Ind. Code § 34-44-2-3 (emphasis added). For the purposes of the Advance Payment Statute, the term "advance payment" is defined as a payment made:

> (1) by:
>> (A) the defendant in an action to recover damages for personal injuries, wrongful death, or property damage; or
>> (B) the defendant's insurance company; and
> (2) to or for the plaintiff or any other person.

Ind. Code § 34-6-2-3. As thus limited, however, a court shall reduce an award to the plaintiff but only *"to the extent the award includes"* such an advance payment. Ind. Code § 34-44-2-3(2).

---

[9] Note that evidence of advance payment is permitted only *after* it is determined that a plaintiff is entitled to recover. This is further assured by subsection 2(b) of the Advance Payment statute: "Except as provided in section 3 of this chapter, evidence of an advance payment is not admissible during the trial for any purpose by either plaintiff or defendant." Ind. Code § 34-44-2-2(b).

11

Within the normal custom and usage in the field of automobile insurance, the term "advance payments" refers to voluntary payments made by a liability insuror in advance of any final settlement with a claimant, which are intended to assist the claimant in meeting ongoing living expenses before the severity of injury and extent of damages can be fully assessed and a negotiated settlement reached. James L. Graham, *Advance Payment in Personal Injury Claims*, 3 THE FORUM 208-209 (1968); Frederick J. Hislop et al., *Advance Payments and Rehabilitation*, 18 FED'N OF INS. COUNS. Q. 25, 30-31 (1968). A principal advantage to the insuror is that such voluntary payments make it less likely that the claimants will seek legal advice and representation and rather settle directly with the liability insuror. Hislop, *supra*, at 25, 46. The advent of the advance payments technique for handling claims by liability insurance companies modified the prior general practice of withholding all payments to an injured claimant until the claimant was willing to sign a full and final release. *Id*. at 30. But advance payments do not merely benefit liability insurers. They are also quite advantageous to personal injury victims, particularly those whose injuries involve protracted treatment, uninsured medical expenses, or loss of income. The statute thus encourages this humanitarian practice of voluntary advance payments by tortfeasors and their insurors.

The language of the statute, by providing that a court shall reduce an award to the plaintiff "to the extent" it includes such an advance payment, applies to require an offset only for the same type of payments. Thus a pre-suit payment for automobile property damage by a liability insuror is not to be applied to reduce an award for bodily injury liability.

So it is with payments made under contractual medical payments coverage. A policyholder pays an additional premium for this coverage and it provides payment of medical expenses for passengers in the insured vehicle without regard to liability. Benefits under medical payments coverage are thus independent of liability coverage benefits, except were the policy terms provide otherwise. For this reason, contractual medical coverage payments are of a wholly different nature than amounts due under a liability award against a tortfeasor or the liability insuror. The "to the extent [it] includes" language of the advance payment statute, standing alone, therefore does not include contractual medical payment benefits previously received by a per-

sonal injury plaintiff.

But where the policyholder and insuror have agreed otherwise, as provided here by the express terms of the insurance contract, that payments made under medical payments coverage operate to reduce the limits of bodily injury liability coverage, the Advance Payment statute will apply to require such advanced medical expenses to be excluded from a liability judgment against the insured.

I also agree with the majority's conclusion that the subrogation statute, Indiana Code § 34-53-1-2, does not apply here because the policy language provides for a limitation and not a recovery or reimbursement.  Such limitation is thus not in the nature of "subrogation or reimbursement rights."

**Sullivan, Justice, concurring and dissenting.**

I concur in the Court's opinion with respect to the advance payments issue.

I respectfully dissent, however, from its holding that Indiana law does not permit recovery of punitive damages from a decedent's estate.

The Court fairly presents both sides of this issue, including conflicting authority from other jurisdictions, and I will not reiterate the analysis here. Suffice it to say that I find the contrary authority cited by the Court allowing recovery to be more persuasive. I only add to the points made by the Court that, first, I give the value of deterrence far greater weight than does the Court and that, second, I think it greatly overstates the harm that would be done to "wholly innocent" heirs if punitive damages were recoverable from an estate. After all, under the Court's holding, the effect on a decedent's heirs would be exactly the same if the decedent paid a punitive damages award on the day preceding his or her death. Whether a guilty person's assets should be subject to an assessment for punitive damages should not turn on the vicissitude of whether the guilty person happens to still be alive at the date of assessment or not.